## HARRINGTON *vs.* SNYDER.

Where a horse, hired to perform a certain journey, and back, becomes disabled by lameness, while on his return, without any fault on the part of the hirer, so that he is unable to travel, and the hirer is thereby compelled to procure other means of returning home, and to incur expenses in consequence thereof, those expenses may be recouped against the demand of the bailor, for the hire of the horse; and if they exceed the value of the horse's services, the bailor cannot recover in an action brought for such services.

A person hiring a horse of another is only responsible for that degree of diligence which all prudent men use in their own affairs. He is bound to ride the horse moderately, and to treat it as carefully as any man of common discretion would treat his own, and to supply it with suitable food. If he does so, and the horse is lamed or injured, the hirer is not responsible for any damages. He is liable only for negligence, unskilfulness, or wilful misconduct.

In an action on the case against the hirer of a horse, for so negligently taking care of the horse that he became of no value, the burthen of proof lies on the bailor. It is not enough for him to show that the horse became disabled; but it must be shown that he became so by the fault of the defendant.

On a contract for the hire of a vehicle usually employed to carry two persons, an agreement, on the part of the hirer, that it shall be used only to carry one, will not be implied.

Where both parties are silent as to the number of persons who are to be permitted to ride in a hired carriage, the hirer is authorized to carry such number as the vehicle was made for, not exceeding the ordinary load adapted to the team drawing the same.

ERROR to the Saratoga common pleas. Snyder sued Harrington before a justice, and declared in assumpsit, for the hire of a horse, cutter and harness, &c. Also, in case, for so negligently taking care of the horse that he became of no value. The plea was the general issue, with notice of special matter. The cause was tried by a jury, who found a verdict for the defendant, before the justice. Snyder removed the cause to the Saratoga common pleas, by certiorari. That court reversed the judgment of the justice. Harrington brought this writ of error to reverse the judgment of the common pleas, and to affirm that of the justice. The facts are stated in the opinion of the court.

*J. C. Hulbert*, for the plaintiff in error.

*W. A. Beach & A. Bockes*, for the defendant in error.

*By the Court*, WILLARD, J.   At the time of the letting of the horse by Snyder to Harrington, it was known to both parties that the horse was lame. A price was fixed for the use of the horse; and Harrington said the lameness made no difference to him if the horse performed his journey. The journey which was to be performed, and the length of time which the hirer expected to be absent, were expressly agreed upon by the parties. The rights and liabilities of the parties are to be determined by the rules applicable to the fifth species of bailment, as it is described in the elementary books. (2 *Kent's Com.* 585. *Story on Bailm.* 374.) The main obligations of the *letter to hire* (*locator rei*) deduced from the nature of the contract, are, to deliver the thing to the hirer; to refrain from every obstruction to the use of it by the hirer, during the period of the bailment; to do no act which shall deprive the hirer of the thing; to warrant the title and right of possession to the hirer, in order to enable him to use the thing, or to perform the service; to keep the thing in suitable order and repair, for the purposes of the bailment; and, finally, to warrant the thing free from any fault, inconsistent with the proper use or enjoyment of it. (*Id.*) The obligation to keep the thing in suitable repair for the purposes of the bailment is considered by Pothier as arising by operation of law, from the fact that the enjoyment or use, contemplated by the contract, cannot otherwise be obtained. (*Story on Bailment*, 377.) Thus, if a hired horse is taken sick on the journey agreed on, without the fault of the hirer, the expenses which are bona fide incurred for his medicine, nourishment and care during his sickness, are to be borne by the *letter to hire*; whether the horse recovers or dies of the malady. (*Id.* 378.) The engagements of the party taking a thing to hire, (*conductor rei*,) are to put the thing to no other use than that for which it is hired; to use it well; to take care of it; to restore it at the time appointed; to pay the

Harrington *v.* Snyder.

price or hire; and in general, to observe whatever is prescribed by the contract, or by law, or by custom. (*Story on Bailment,* 388.)

As this species of bailment is of mutual benefit, the hirer is only responsible for that degree of diligence which all prudent men use, in their own affairs. The man who hires a horse is bound to ride it moderately, and to treat it as carefully as any man of common discretion would his own, and to supply it with suitable food. And if he does so, and the horse in such reasonable use is lamed or injured, he is not responsible for any damages. This was expressly ruled by this court in *Millon* v. *Salisbury,* (13 *John. Rep.* 211.)

In the present case, it appears from the evidence that the horse performed the journey to the place of destination, without apparent injury. On his return, his lameness increased, and he became entirely disabled in travelling on the first day about thirteen miles. He was unable to perform the remainder of the journey. He was left at a public house, and was there kept and doctored for several days, when he so far recovered that he was able to be led to Saratoga Springs, where he belonged. This was done at the procurement and expense of Harrington, the hirer. The latter also was compelled, when the horse gave out, to procure other means of returning home. And it was at his expense also that the cutter and harness were returned to Snyder, the owner. All these expenses were sought to be recouped by Harrington against the price agreed to be paid for the use of the horse and cutter. They were allowed by way of recoupment by the jury, as they merely found a verdict for the defendant before the justice. Those expenses, as proved, exceeded the amount agreed to be paid for the services of the horse; and as the horse had not performed the journey for which he was hired, and this failure was not owing to the fault of the hirer, but to the defects of the animal, the letter to hire could not recover for the services which were performed. The whole journey out was about 70 miles, and was expected to take the whole or a part of two days in going, and the like time in returning. These facts show, what is not stated in

Harrington v. Snyder.

the return, that the evidence on the part of Harrington was received by the justice and allowed by the jury, by way of recoupment, and not by way of set-off.

The defendant before the justice was liable only for negligence, unskilfulness or wilful misconduct. The declaration of the plaintiff below charges him with "carelessness, negligence and improper conduct," with respect to the management and care of the horse. The burthen of proof lay on the bailor, the plaintiff below. It was not enough to show that the horse became disabled, unless he showed also that the disability was occasioned by the defendant's fault. (*Newton* v. *Pope*, 1 *Cowen*, 109. *Story on Bailm.* 403, 404.) A different rule prevails in France and Scotland, and probably in other countries governed by the civil law. The code Napoleon, art. 1732, &c. throws upon the hirer the burthen of proving that the loss has not been by his fault. (1 *Bell's Com.* 454. *Code of Louisiana, art.* 2691.) But the rule of the common law is clearly otherwise; with us, the *onus* rests upon the party who asserts negligence. (*See also Platt* v. *Shippard*, 7 *Cowen*, 497 ; *Schmidt* v. *Blood*, 9 *Wend.* 268.)

There was not only an entire failure of evidence of carelessness, unskilfulness or misconduct on the part of the hirer, but there was strong evidence of careful usage, and kind treatment of the horse on his part. The verdict of the jury in his favor on this point cannot therefore be disturbed. But it is urged that the fact that the defendant below took another person into his cutter on returning home, is conclusive evidence of misconduct. There is, on the part of the hirer, as has been already intimated, an implied obligation not only to use the thing with due care and moderation, but also not to apply it to any other use than that for which it was hired. Thus, if a horse is hired as a saddle horse, the hirer has no right to use the horse in a cart, or to carry loads, or as a beast of burden. So if horses are hired for a week, the hirer has no right to use them for a month. And it may be generally stated, that if the thing is used for a different purpose from that which was intended by the parties, or in a different manner, or for a longer period, the

Harrington *v.* Snyder.

hirer is not only responsible for all damages, but if a loss afterwards occurs, although by inevitable casualty, he will generally be responsible therefor. (*Story on Bailm.* 406, *and cases there cited.*) In short, such misuser is deemed, at the common law, a conversion of the property, for which the hirer is generally held responsible to the letter to hire, to the full extent of the loss. (2 *Saunders*, 47, *n. g.* 5 *Mass. Rep.* 104. 3 *Pick.* 492. 12 *Id.* 136.) There is no evidence in this case that Harrington was prevented, by the terms of the contract, from taking a friend into his cutter with him. Nor is there any evidence with respect to the usage in such cases. It was not shown that taking the extra passenger had a tendency to injure the horse. On the contrary, it appears that he assisted the defendant below in drawing the cutter for miles, and that both walked on foot a great part of the way, till the horse gave out. The defendant below did not apply the horse to a different purpose from that agreed on. It can hardly be said, that in a contract for the hire of a vehicle usually employed to carry two persons, an agreement is implied that it shall be used only to carry one. When both parties are silent as to the number of persons who are permitted to ride in a hired carriage, the hirer is authorized to carry such number as the vehicle was made for, not exceeding, of course, the ordinary load adapted to the team drawing the same.

Whether, as the defendant below had the use of the horse in performing the journey out, he should be liable to pay *pro tanto*, does not arise in this case. Nor does the question arise whether the defendant below could have maintained an action against the plaintiff, for the failure of the horse to perform; or for the expenses of taking care of the horse after he became disabled; or for the defendant's expenses in returning home; or for the expenses of returning the horse and cutter to its owner. Probably in an action of assumpsit for the hire of the horse, those expenses might be set off. (2 *R. S.* 234, § 50.) But the evidence seems rather to have been received by way of recoupment than set-off; and as the defendant's expenses actually and in *good faith* incurred, exceeded the hire of the

horse and cutter, those questions do not become material in this case. Under the counts in *case,* there could be no set-off. But the defendant below could recoupe his expenses, &c. arising from the failure of the horse to perform, against the value of his services. (*M'Allister* v. *Reab,* 4 *Wend.* 483 ; *S. C. in error,* 8 *Id.* 109. *Batterman* v. *Pierce,* 3 *Hill,* 171. *Van Epps* v. *Harrison,* 5 *Id.* 63. *Whitbeck* v. *Skinner,* 7 *Id.* 53.) There was, therefore, no substantial error committed by the justice in receiving the testimony on the part of the defendant below, which was objected to by the plaintiff below.

I think the Saratoga common pleas erred in reversing the judgment of the justice, and that their judgment should be reversed, and that of the justice affirmed.

-                        Judgment accordingly.

SAME TERM.    *Before the same Justices.*