JOHN W. KISSAM, APPELLANT, *v.* ROBERT C. JONES, RESPONDENT.

*Personal injury from a vicious horse — duty of the owner to inform one hiring the horse of his vicious habits — evidence.*

In an action to recover damages for injuries received in a fall from a carriage, caused by a vicious horse which the plaintiff had hired from the defendant, it appeared that the plaintiff inquired at the defendant's stable, of a man in charge thereof, if the horse was all right and was told that he was just a little " skeery." After the plaintiff had driven about a mile and a half the horse commenced to shy, then started up, turned around and ran down a hill until the plaintiff checked him. When he started to go back the horse turned around and upset the wagon.

The defendant admitted on the trial that he knew the horse would shy when he saw anything on the road and would turn around.

*Held,* that it was the duty of the defendant to have fully informed the plaintiff of the vicious propensities of the horse, and that he was legally liable in damages to the plaintiff because of his failure to impart to him such information.

That, in view of these facts, evidence as to what were " the principal characteristics of that horse " was inadmissible, as the uncontradicted testimony showed that the horse was vicious and had caused the accident by the very habit which the defendant knew that he had.

APPEAL by the plaintiff from a judgment, entered in the office of the clerk of the county of Suffolk on the 20th day of May, 1889, after a trial before the court and a jury at the Suffolk County Circuit, at which a verdict was rendered in favor of the defendant.

*Edward H. Kissam,* for the appellant.

*Thomas J. Ritch, Jr.,* for the respondent.

DYKMAN, J.:

This action is for the recovery of damages for the injury sustained by the plaintiff in a fall from a carriage caused by a vicious horse which the plaintiff hired from the defendant. The cause was tried at the circuit before a jury and the defendant obtained a verdict. The plaintiff has appealed from the judgment, and although a motion was made for a new trial on the minutes of the court and denied, yet the plaintiff has taken no appeal from the order denying such motion. On this appeal, therefore, we are confined to questions of law solely.

We cannot review the case upon the facts to determine whether the verdict was against the evidence, but we can review the testimony to ascertain whether there was any evidence to support the verdict; and if we find none, we can reverse the judgment, for then the verdict was erroneous as matter of law. Such an examination of the testimony discloses the fact that the evidence is not contradictory and stands substantially uncontradicted. The plaintiff applied to the defendant to hire a horse and wagon to drive around the town, and the defendant agreed to furnish the same. In the afternoon of the same day the plaintiff went to the stable of the defendant and saw there a colored man and a boy, and found the horse harnessed to a buggy and tied. An examination of the horse excited some suspicion in his mind and he inquired if he was all right, and he was told that the horse was just a little "skeery;" and to an inquiry if there was any harm he received an answer, "Oh, no, only a little skeery." The answer disarmed his suspicion and he understood only that the horse might shy. He also informed the people at the stable that he was to take out a lady and wanted a good horse on that account, and while he was hesitating whether he should take the horse the colored man assured him that he was all right, "only a little skeery." The suspicions of the plaintiff were thus allayed, he did not think there would be any trouble and took the horse, and after taking in the lady he drove about a mile and a half when the horse commenced to shy, but not very seriously. After he went a little further the horse started up, turned around and ran down the hill, on a run, until the plaintiff checked him, then he started to go back and the horse turned around

and upset the wagon and the plaintiff received very serious injuries from the fall. In the effort to control the horse one of the lines broke, and then all control of the horse was lost and he became unmanageable.

In his examination, in his own behalf upon the trial, the defendant stated that he remembered the plaintiff coming to him and asking him if he had a horse that he could hire to go out riding, and he said to him: "Yes, I have got a horse, if you think you can drive him you can have him." He also said that he knew the horse would shy, and that when he saw anything in the road he would shy and turn around; that he had told his employees not to let the horse out without telling them the kind of a horse he was. He does not state or claim that he gave the plaintiff any notice of any vicious propensity of the horse, that he would turn around in the road, or that he had any vice whatever. One of the defendant's employees, Joseph Smith, testified that the defendant had told him whenever the horse went out, to tell people about him, and that he told the plaintiff that he wanted to look out for him, that he would go all right, to keep a taut rein on him; so that the testimony is substantially uncontradicted. The defendant let this horse to the plaintiff and gave him no notice of any vicious propensity, when he knew that the horse had the habit of turning round in the road, than which nothing can be more dangerous. If a horse turns suddenly around before a four-wheeled vehicle, it is almost certain to be upset, and injury is almost certain to result therefrom.

When the defendant let this horse to the plaintiff the law cast upon him the duty and obligation to give the plaintiff a horse that was manageable and safe. The law is that the defendant warranted the horse, wagon and harness to be fit for the use contemplated, and such warranty is always implied where the quality or fitness of the article for the use specified is not visible and the defect is not discernible by an ordinary observer. The keeper of a livery stable engaged in the business of letting carriages and horses on hire, is bound to furnish a customer with a carriage and harness reasonably strong, safe and secure for the purposes of the journey. (Edwards on Bailm., § 373.)

It was the duty of the defendant also to inform the plaintiff fully of the vicious propensities of the horse, and he is legally liable for

the damages which resulted to the plaintiff in consequence of his failure to impart to him such information.

It is easy to see that the suspicions of the plaintiff were lulled instead of excited by what the defendant told him, and by what the servants of the defendant told him at the stable. He could only infer from the language used to him that the horse was a little flighty or might shy, but that if he used proper care and caution in the use of the animal, and held upon him a taut rein there was no danger. The information should have extended further, and the plaintiff should have been fully informed of the particularly dangerous habit of the horse, before it can be claimed that he assumed any risk.

There is, therefore, no evidence to sustain the verdict, and it should be set aside.

There is also a fatal exception in the case which will require a new trial. One of the witnesses for the defendant, who had stated that he had frequently driven the horse, was asked this question: " State to the jury what are the principal characteristics of that horse ? " This was objected to as immaterial. The objection was overruled and the plaintiff excepted.

After the uncontradicted testimony that the horse was vicious and had caused the accident by the very habit which the defendant knew he had, the evidence respecting the character or disposition of the horse was improperly admitted. It was entirely immaterial what the general disposition or character of the horse was. In obedience to his well-known vicious propensity, he had turned round suddenly in the road, upset the wagon and injured the plaintiff, and that gave him a cause of action and imposed liability upon the defendant for the result; and evidence of the character of the horse was entirely immaterial and was well calculated to divert the attention of the jury from the proper consideration of the real question at issue. (*Buckley* v. *Leonard*, 4 Denio, 500.)

In that case, where the owner of a dog, which had bitten other persons, had notice of the fact, and afterwards suffered him to be at large, when he bit the plaintiff, it was held that it was no answer to the action for the injury to the plaintiff that the dog was generally inoffensive; and JEWETT, J., in giving the opinion in that case, said : " The evidence given by the defendant of the mild character and

deportment of the dog, I think, was improperly admitted; it was immaterial. If the evidence proved that the dog bit the plaintiff, that the defendant was the owner, and knew or had notice that the dog had been accustomed to bite others, he was responsible for the injury, however high the character of the dog for mildness stood among the neighbors. Such evidence was well calculated to divert the jury from a proper consideration of the real point in issue. * * * The evidence of the injury to the plaintiff, of the dog having previously bitten others, and that the defendant had notice of it, stands uncontradicted, and these facts were abundantly sufficient to require the jury to find for the plaintiff."

The same principle applies to this case. So our conclusion is, first, that the verdict is entirely unsupported by the evidence, and, second, that a fatal error was committed in the admission of the testimony respecting the characteristics of the horse. As the testimony stood at the close of the case the evidence required a verdict for the plaintiff; and the trial judge would have been entirely justified in directing the jury to find for the plaintiff, leaving the question of damages alone for the consideration of the jury.

The judgment should, therefore, be reversed, and a new trial granted, with costs to abide the event.

PRATT, J., concurred.

Judgment and order denying new trial reversed and new trial granted, costs to abide event.