GEORGE L. COPELAND *vs.* HORACE DRAPER.

Suffolk. November 29, 1892. — January 4, 1893.

Present: FIELD, C. J., ALLEN, HOLMES, KNOWLTON, & BARKER, JJ.

*Letting of Horse — Warranty.*

One who lets a horse does not warrant that it is free from defects which he does not know of, and could not have discovered by the exercise of due care.

THIS was an action of tort. Trial in the Superior Court, before *Fessenden*, J., who reported the case for the determination of this court, in substance as follows.

The plaintiff introduced evidence tending to show that he was a police officer of Boston ; that three or four weeks prior to the time when he received the injuries hereinafter mentioned, the defendant, who was a livery stable keeper, furnished for hire to the city of Boston a horse to be used by the mounted patrolmen of Boston; that the horse was examined and tried at the defendant's stable by one of the mounted police officers of Boston, and selected by him and taken for use by the city of Boston ; that for several weeks thereafter the horse was ridden by this officer, who testified at the trial that the horse was free from all faults and in every way suitable for the purpose for which it was hired ; that the plaintiff, acting in the due discharge of his duty, mounted the horse and rode it toward the defendant's stable ; that while the plaintiff was so riding the horse, and while he was in the exercise of due care, the horse became restive and uncontrollable, shook its head, bolted, and ran violently upon a sidewalk, threw the plaintiff and fell upon him, breaking the plaintiff's leg, and otherwise injuring him ; that the plaintiff had had experience in riding and managing horses before the injury ;

that the horse had been ridden by other patrolmen, and had not shown any symptoms of viciousness or bad habits, or defects in any way; that there was a scar in the mouth of the horse, which scar " looked as if caused by a cut." There was no further evidence concerning the scar. The plaintiff testified, on cross-examination, that he thought the horse at the time of the accident must have had a fit, or blind staggers, or something of that kind.

The report further recited, that, " at the close of the plaintiff's evidence, the defendant requested me to rule that on all the evidence the plaintiff could not recover. In reply to a question put by me, the counsel for the plaintiff stated that there was no evidence upon which it could be found by the jury that the defendant, prior to the accident, knew, or by the exercise of reasonable care or diligence could have known or discovered that the horse was as described in the declaration. The plaintiff claimed, and requested me to rule, that the defendant was bound to furnish a suitable horse, and that, if the horse at the time of the accident was unmanageable and unsuitable, the defendant was liable to the plaintiff in the action, without regard to the defendant's knowledge or negligence; and that, it appearing that the horse was unmanageable at the time of the accident, a *prima facie* case was made out as to the negligence of the defendant. I declined to rule as requested by the plaintiff, and ruled that, upon all the evidence, the plaintiff could not recover. At my direction, the jury returned a verdict for the defendant. If the foregoing ruling and direction were correct, judgment is to be entered on the verdict; otherwise, the verdict is to be set aside, and a new trial granted."

*J. E. Hanly*, for the plaintiff.

*H. G. Allen*, for the defendant, was not called upon.

HOLMES, J. *Horne* v. *Meakin*, 115 Mass. 326, the case relied on by the plaintiff, only decides that, if a party negligently furnishes an unsuitable horse, it is not a defence that he did not know that the horse was unsuitable. In the case at bar, negligence was excluded by the plaintiff's admission that there was no evidence that the defendant knew, or by the exercise of reasonable care could have known, that the horse was unsuitable, if in fact it was; therefore, in order to recover, the plaintiff

must maintain that a livery stable keeper warrants or insures the suitableness of every horse which he lets.

No such liability is imposed on him by the fact that he follows a common calling, any more than it is upon every man who keeps a shop.  Even in old times, the exercise of a common calling only required a man to show skill in his business.  F. N. B. 94 D.  *Norris* v. *Staps*, Hob. 210, 211.  3 Bl. Com. 164.  *Rex* v. *Kilderby*, 1 Saund. 311, 312, n. 2.  Common carriers were insurers, not because they had a common calling, but because they were bailees, coupled with certain gradual changes in the law not material here.  See *Brewster* v. *Warner*, 136 Mass. 57, 59.

If it should be sought to charge the defendant for the horse as for a dangerous animal, the liability for a horse on that ground, apart from bailment, is confined to cases where the owner has notice of the dangerous tendency.  *Commonwealth* v. *Pierce*, 138 Mass. 165, 179.  *Dickson* v. *McCoy*, 39 N. Y. 400, 403.  See also *Hawks* v. *Locke*, 139 Mass. 205, 208.  The suggestion has been made, following Mr. Justice Story's statement of the doctrine of Pothier, that bailors for hire generally warrant the suitableness of the thing let.  *Harrington* v. *Snyder*, 3 Barb. 380, 381.  Story, Bailm. §§ 383, 390.  But the common law in general applies the principle of *caveat emptor* when the hirer has examined the article.  *Cutter* v. *Hamlen*, 147 Mass. 471, 475.  See further *Hawks* v. *Locke*, *ubi supra ; McCarthy* v. *Young*, 6 H. & N. 329.

The supposed warranty, if it existed, could not be placed on any of the foregoing considerations, but would have to stand on the analogy of carriers or passengers, taking their liability in the strictest form in which it ever has been taken.  There have been intimations, if not decisions, in favor of such a view with regard to vehicles let for the known purpose of carrying passengers.  *Jones* v. *Page*, 15 L. T. (N. S.) 619.  *Leach* v. *French*, 69 Maine, 389, 392.  *Harrington* v. *Snyder*, 3 Barb. 380.  *Kissam* v. *Jones*, 56 Hun, 432, 434.  Compare *Francis* v. *Cockrell*, L. R. 5 Q. B. 501, 503 ; *Fowler* v. *Lock*, L. R. 7 C. P. 272; L. R. 9 C. P. 751, n.; L. R. 10 C. P. 90.  But an opposite decision was reached in *Hadley* v. *Cross*, 34 Vt. 586, and in this Commonwealth, even, carriers of passengers do not warrant their vehicles, and are not liable, if wholly free from negligence.  *Ingalls* v. *Bills*, 9 Met. 1.  *White* v. *Fitchburg Railroad*, 136 Mass. 321, 324.

See *Readhead* v. *Midland Railway*, L. R. 2 Q. B. 412; L. R. 4 Q. B. 379. It follows, *a fortiori*, that one who lets a horse does not warrant that it is free from defects which he does not know of, and could not have discovered by the exercise of due care. See Story, Bailm. § 391 *a*; Edwards, Bailm. § 373.

*Judgment on the verdict.*