BUILDERS' BRICK & SUPPLY CO., INC., Appellant, *v.* WALSH TRANSPORTATION COMPANY, INC., Respondent.

(Supreme Court, Appellate Term, First Department, March, 1919.)

Bailments — hiring of dredge — no implied warranty that a particular thing shall be reasonably fit for the purposes for which it is hired — trial — erroneous charge.

Upon the letting of a particular dredge, not examined by the hirer and about the condition of which no question is asked, there is no implied warranty that it is in reasonably good work-

ing condition and a charge to the jury to the contrary is erroneous.

In an action for the amount agreed to be paid and for negligence in the use of the dredge, a counterclaim for breach of an implied warranty that the dredge when hired was in reasonably good working condition was dismissed, and the case was given to the jury upon plaintiff's claim and under a charge, to which defendant excepted, that the law implied that in the letting plaintiff warranted that the dredge was reasonably fit for the purpose for which it was hired. *Held,* that the charge was erroneous and a judgment entered on the verdict in favor of defendant will be reversed and a new trial ordered.

APPEAL by plaintiff from a judgment of the Municipal Court of the city of New York, borough of The Bronx, second district, in favor of the defendant, entered upon the verdict of a jury.

Randall & Larson (Theodore E. Larson, of counsel), for appellant.

Abraham B. Schleimer, for respondent.

MULLAN, J.   The action is by the letter to hire, of a dredge, for the agreed rent, and for damages for the negligent use of the dredge by the defendant hirer. The latter denied generally, and counterclaimed for damages for breach of a claimed implied warranty of reasonably good working condition. The counterclaim was dismissed, and the case was given to the jury solely upon the plaintiff's claim, and the defendant had a verdict. The view we take makes it unnecessary to discuss the proofs offered in support of the counterclaim.

The learned trial justice, over the objection and exception of the plaintiff, charged that the law implied that in letting the dredge the plaintiff warranted that it was reasonably fit for the purpose of the hiring,

Appellate Term, First Department, March, 1919. [Vol. 106.

which, as applied to the facts here, meant that it was in reasonably good working condition. The chief assignment of error is that the instruction referred to was an incorrect statement of the law, in that there was no implied warranty.

The letting agreement was in writing, and was signed, sealed and acknowledged by both parties. It provided that the plaintiff letter " has this day chartered and hired unto the said party of the second part (the defendant hirer) the dredge 'Arthur H.' of New York, with all appurtenances which belong to said dredge, for the term from July 21, 1917, to August 11, 1917." The defendant agreed on its part to pay for the use of the dredge, at stated times, the sum of thirty dollars per day; that it " shall be at all expense of manning and furnishing and towing and water said boat; " and that it would return the dredge at the end of the lease period " in as good condition as it now is, with the exception of the ordinary use and wear." The agreement was silent as to the condition of the dredge at the time of the hiring, and as to the purpose of the defendant in hiring it.

The defendant's proof was sufficient to show that the dredge, when taken over by the defendant, was not in good working order. At least, we shall assume for the purpose of the discussion of the implied warranty question, that enough was adduced to support a finding to that effect. It was claimed that gear-teeth of the cable-winding drum were broken, that the steel cables were worn so that strands had loosened, that the engine was in need of repairs, that the boiler leaked, that the smokestack was corroded by rust, etc. One of defendant's witnesses summed up his description of the dredge by describing it as " a hunk of junk."

Plaintiff's counsel consistently maintained throughout the trial that there was no issue in the case that

depended upon the condition of the dredge at the time of the hiring. The appeal thus squarely presents a question of considerable importance, as to which there is a very astonishing dearth of authority, which is — does the law raise an implication of reasonable fitness or capability in the case of a bailment for hire of a specific, ascertained article? The textwriters throw no light upon the subject. If their general statements were to be taken as not admitting of exceptions, it would appear that their view was that it is immaterial whether the hiring be of a particular, specific chattel, or of a chattel of a certain stated kind, or of a chattel to be supplied to fill a stated need of the hirer, and that in any of these cases the letter must be held to have impliedly warranted the reasonable fitness or capability of the thing hired. Story Bailments (9th ed.), §§ 373a, 390, 390a; 2 Kent's Comm. 506; Add. Cont. (11th ed.) 807; Redfield Carriers, § 687; 5 Cyc. 179; 3 Am. & Eng. Ency. of Law, 761; 7 id. 306, 307; 3 Ruling Case Law, §§ 32, 61–71, Bailments; Edwards Bailments (3d ed.), § 373; Story Cont. (5th ed.) § 883; 6 C. J. 1117, § 52, Bailments; Elliott Cont. § 3073; 1 Halsbury's Law of Eng. 550. And see dicta in *Francis* v. *Cockrell,* L. R. 5 Q. B. 501, 508; *Harrington* v. *Snyder,* 3 Barb. 380.

Were the matter wholly one of first impression, to be determined on principle and reason unaffected by judicial thought already expressed, we should be inclined to think it fairly plain that ordinarily, when one man hires of another a specific chattel, without obtaining an express warranty, the hirer should be deemed to have taken the chattel as it is, and that he alone took the chance and risk of it proving to be suited to the work or use he intended putting it to. Should the hiring be of a thing merely of a certain kind of style, the selection of the individual article

being left to the letter, it is the *use*, rather than the thing, that is really contracted for.   The mere fact that the selection is made by the hirer would not, of course, always be enough of itself to show that it was the thing, and not the use, that was the subject-matter of the agreement.   If, for example, the letter is asked by the hirer to show him articles of a certain kind, capable of doing a certain class of work, or of accomplishing any given result, the showing by the letter of several of these articles, and the picking out of any one of them by the hirer, would not ordinarily turn the nature of the hiring from one of a use into one of a thing.   In such a case the selection of the particular article would not amount to an exercise of the hirer's judgment; he would still be relying on the letter's judgment, and himself doing nothing more than exercising a choice springing from mere taste or caprice.   See *Rinaldi* v. *Mohican Co.,* 225 N. Y. 70.   In all such cases as these, the hirer hires under an agreement which in its essence disregards the identity of the thing hired, and looks only, or chiefly, to the results to be obtained from the use of that thing.   It is the usability of that thing that the hirer pays for, and he cannot obtain that usability unless the thing hired is reasonably capable of accomplishing the desired result. Where, however, one hires a specific and ascertained thing, with its own individual identity, he ought, in reason, to be compelled to take it as it is, if he be so foolish as to forego the protection so easily obtainable by means of an express warranty, a stipulation that is very simply made, and whose form is of little consequence.   *Hawkins* v. *Pemberton,* 51 N. Y. 198.   To argue the contrary would be to say that a man may hire a particular thing, even at a price so low as of itself to invite suspicion as to its condition, without troubling himself either to examine it, or to inquire

about its condition or capacity and yet be given by the law, by way of an implied warranty, all the advantage that a careful man would get from a zealous and alert protection of his interests. Such a doctrine would put a premium on carelessness, and tend to promote fraud. Here, the defendant's officer had seen this dredge, the *Arthur H.,* lying in the Harlem river, as he was passing by on a train, and some time later he sent an employee of his company to the plaintiff, and procured from it a lease, not of a dredge generally, but of that particular dredge. No examination of the dredge was made, and no questions were asked about its condition. It was the defendant's own fault that, having failed to inspect the dredge, or to cause the insertion in the lease agreement of an express warranty that the dredge was in good working order, it first learned of what we shall assume to have been the bad condition of the dredge, after it had been committed to the hiring of the dredge by the lease it entered into.

It is not apparent why the rule in relation to the hiring of a specific chattel should differ from that in relation to the hiring of specific realty, in respect of an implication by law of a warranty of suitability or condition. There is nothing better settled in this state, and generally, than that no such warranty is implied in the case of leases of real estate. *Jaffe* v. *Harteau,* 56 N. Y. 398; *Edwards* v. *New York & H. R. R. Co.,* 98 id. 245; *Franklin* v. *Brown,* 118 id. 110; *Daly* v. *Wise,* 132 id. 306; *Steefel* v. *Rothschild,* 179 id. 273. That is the rule in England. *Sutton* v. *Temple,* 12 M. & W. 52; *Hart* v. *Windsor,* Id. 68; *Francis* v. *Cockrell,* L. R. 5 Q. B. 501; *Franklin* v. *Brown,* 118 N. Y. 114; *Daly* v. *Wise,* 132 id. 311; 18 Halsbury's Law of Eng. 569. It was held in England in the famous case of *Smith* v. *Marrable,* 11 M. & W. 5 (Exchequer, 1843) that the law will imply, in the case of a lease of a furnished

30

house, a warranty by the lessor that it is habitable. In two later cases, heard in the same year, by the same court (*Sutton* v. *Temple, supra,* and *Hart* v. *Windsor, supra*), the doctrine of *Smith* v. *Marrable* was questioned, and in *Franklin* v. *Brown, supra,* Judge Vann, in commenting upon it, says that the decision there, although followed **in** a much later English case (*Wilson* v. *Hatton,* L. R. 2 Exch. Div. 336 [1877]; and see also 18 Halsbury's Law of Eng. 569, note " a "), has been frequently criticized, and never adopted in this state; and although the doctrine of the *Smith* v. *Marrable* case was not in terms rejected, the decision of the Court of Appeals in effect was an unmistakable repudiation of it. See, also, *Daly* v. *Wise,* 132 N. Y. 310, 311. In the *Franklin* case the question for decision was not distinguishable from that in *Smith* v. *Marrable.* It was, whether in the lease of a furnished house the law will imply a warranty of habitability. The appeal was from the General Term of the old Superior Court (53 N. Y. Super. Ct. [21 J. & S.] 474), and Judge Vann quoted with approval the statement in the opinion of the lower court that " The tenant hires at his peril, and a rule similar to that of *caveat emptor* applies and throws on the lessee the responsibility of examining as to the existence of defects in the premises and of providing against their ill effects."

In *Francis* v. *Cockrell, supra,* Kelly, C. B., said that there was no implied undertaking by a lessor that the demised real estate " shall be reasonably fit for the purpose for which it is let, that is, for the purpose of habitation. There is really no analogy at all between the case of a lessor and lessee of a house and the case of one who contracts for the supply of a carriage, or for the supply of a seat in a stand upon a race-course, or for the safe passage over a railway bridge. In the case of a lessor and lessee

of a house, both parties, before the lease is granted and accepted, ascertain for themselves the condition of the premises, and they then enter into such express covenants as they may think fit for the repair of the premises, or for any other purpose incidental to the enjoyment of the premises." Quoted in *Steefel* v. *Rothschild, supra,* 278. It is plain from the language of the chief baron that the lease of personalty he refers to is not one of a specific chattel, and that what he says actually amounts to an indirect argument in favor of an analogy between a lease of realty and lease of an ascertained chattel.

Whether or not the rule that an implication of a warranty of habitability or suitability will not be imported by law into a lease of realty, originally sprang from, or was thought to be an outgrowth of, the rule of *caveat emptor,* we think that every reason for the existence of the last-named rule applies with equal force to the case of the letting of an ascertained and specific chattel. We have seen that in *Franklin* v. *Brown, supra,* the Court of Appeals has expressly stated that there is a close analogy between the two cases. In *Jaffe* v. *Harteau, supra,* Judge Grover said: " There is no reason for holding the lessor, in the absence of any agreement or fraud, liable to the tenant for the present or future condition of the premises, that would not be equally applicable to a similar liability sought to be imposed by a grantee in fee upon his grantor." In *Sutton* v. *Temple, supra,* Baron Parke treats the cases as wholly analogous, and in distinguishing the decision in *Parkinson* v. *Lee,* 2 East, 314, involving the sale of hops, he directed attention to the fact that there the sale was not of hops merely, but of specific, ascertained hops, because of which it was held that the law would not imply a warranty of their condition or merchantability. Indeed

while there is in certain respects a marked lack of harmony among the decisions dealing with implied warranties, there is complete unanimity in this, that in the case of a chattel that is in existence, and that is defined, and that is specifically sold, where the seller is not a dealer, or a manufacturer, or the grower, and where the title passes *in præsenti,* so that the transaction is an executed sale, there is not, either as matter of fact or as matter of law, an implied warranty as to its merchantability, its capability, its condition, or its suitability for the buyer's purpose; and it matters not at all what price the buyer paid, or that he had no opportunity to examine the article so purchased by him.   The rule of *caveat emptor* applies in such a case with all its strictness, and the buyer has no legal ground for complaint, in the absence of actionable fraud or an express warranty. *Seixas* v. *Woods,* 2 Caines, 48; *Welsh* v. *Carter,* 1 Wend. 186; *Hart* v. *Wright,* 17 id. 267; affd., 18 id. 449; *Howard* v. *Hoey,* 23 id. 350; *Hargous* v. *Stone,* 5 N. Y. 73; *Bartlett* v. *Hoppock,* 34 id. 118; *Charlotte C. & A. R. R.* v. *Jesup,* 44 How. Pr. 447; *Howard Iron Works* v. *Buffalo Elevating Co.,* 113 App. Div. 562; *Barr* v. *Gibson,* 3 M. & W. 389; *Chanter* v. *Hopkins,* 4 id. 399; *Parson* v. *Sexton,* 4 C. B. 898; *Jones* v. *Just,* L. R. 3 Q. B. 197; Benj. Sales (5th ed.), 608–611, 624–626; 2 Mechem Sales, § 1349; 22 L. R. A. 188.   And see, also, as to distinction between executed and executory sales, *McCormick* v. *Sarson,* 45 N. Y. 264; *Dutchess County* v. *Harding,* 49 id. 321; *Coplay Iron Co.* v. *Pope,* 108 id. 232.   Nor, in the case referred to, does the seller's knowledge of the buyer's intentions create an implied warranty as matter of law; at most it may in certain circumstances raise an issue of fact for the jury. *Bartlett* v. *Hoppock, supra.*

We think, therefore, that unless there be control-

ling authority to the contrary, the decision here should be that there was no implied warranty. A diligent search has led to the discovery of but very few cases that touch the point at all, and in only one of them does the precise question we are here discussing seem to have been considered, and that is *Robertson* v. *Amazon Tug & Lighterage Co.,* 7 Q. B. Div. 598, decided by the Court of Appeal of England in 1881. The contract there may not easily be stated in a short space, but it in effect was, and was treated by a majority of the court as, the hiring of a tug, known as the *Villa Bella.* The agreement was in writing, the purpose of the hiring — a voyage to Brazil — was stated, and there was no express warranty of condition. During the voyage the vessel proved to be in poor condition in certain respects, and the question involved was whether there was an implied warranty of suitable condition. The case was tried before Lord Chief Justice Coleridge, without a jury, and after long consideration he held that there was an implied warranty. The Court of Appeal reversed the judgment, Brett, L. J., and Cotton, L. J., so voting, and Bramwell, L. J., dissenting, all with opinions devoted entirely to the question of implied warranty. Bramwell, L. J., said he could find no authority closer than a *dictum* in *Smith* v. *Marrable,* and says he rests his opinion on " common sense." Brett, L. J., says: " When there is a specific thing, there is no implied contract that it shall be reasonably fit for the purpose for which it is to be hired or is to be used. That is the great distinction between a contract to supply a thing which is to be made, and which is not specific, and a contract with regard to a specific thing. In the one case you take the thing as it is, in the other the person who undertakes to supply it is bound to supply a thing reasonably fit for the purpose for which it is

made.'' Cotton, L. J., did not regard the contract as one of hiring, but we are unable to discover any real difference between his view of the nature of the agreement from that entertained by his brethren. He said: '' It has been suggested that the plaintiff is in the same position as the hirer of an ascertained chattel, and the defendants in the same position as the person who lets the chattel to hire. There is at least a doubt what warranty the law implies from the relation of hirer and letter to hire of an ascertained chattel. But, however this may be, in my opinion the relation of the parties here is different. The plaintiff here contracts with the defendants, for a sum to be paid by them, to take a vessel and barges to South America, with liberty to use the vessel as a tug. * * * If the vessel were not at the time of the contract ascertained and known to both parties, probably the contract would imply such a warranty as relied on by the plaintiff. But a contract made with reference to a known vessel in my opinion stands in a very different position. In such a case, in the absence of actual stipulation, the contractor must, in my opinion, be considered as having agreed to take the risk of the greater or less efficiency of the chattel about which he contracts. He has to determine what price he will ask for the service or work which he contracts to render or to do. He may examine the chattel and satisfy himself of its condition and efficiency. If he does not, and suffers from his neglect to take this precaution, he cannot, in my opinion, make the owner liable. He must, in my opinion, be taken to have fixed the price so as to cover the risk arising from the condition of the instrument which he might have examined if he had thought fit so to do.''

In *Gleason* v. *Smith*, 39 Hun, 617 (1886), the plaintiff sued for the agreed price for hire of certain

specific machinery, being a steam engine, boiler and pump, and the defense and counterclaim were rested upon the claim that part of the machinery mentioned was not in good working order, and that thus there was a breach of an implied warranty that the machinery was in suitable condition. The General Term held that there was no implication of a warranty, Daniels, J., for the court saying: " Neither the engine, pump or boiler was hired to perform any special or particular service. If either had been, a warranty might be implied as to the sufficiency of the machinery for the purpose. (*Gautier* v. *Douglass Mfg. Co.,* 13 Hun, 514; *Hawkins* v. *Pemberton,* 51 N. Y. 198.) But all that appeared to have taken place was that the engine was selected by the agent of the defendant, and that it was hired by the plaintiff to the defendant. There was no agreement on his part that he would keep it in repair, and no representation that it was adapted to any particular purpose or use. And as it was placed in the possession and subject to the use of the defendant without stipulation concerning its capacity or ability, the rights of the parties are to be determined by the contract which they in that manner made."

In *Bass* v. *Cantor,* 123 Ind. 444, Cantor let to hire to Bass a mare, to be used in drawing a street car. The mare died while in such service, and Cantor sued Bass for negligence, claiming that the mare was mishandled and not properly fed. Bass contended that the mare proved to be not strong enough to do the work for which she was hired, that there was an implied warranty that she was capable of doing the work of a street-car horse, and that it was no fault of his if she gave out and died under the strain of ordinary work of that kind. The court, without stating any reason or citing authority, agreed that

Appellate Term, First Department, March, 1919.    [Vol. 106.

there was such an implied warranty, but held Bass for improperly using the animal after she had given signs of exhaustion.

These are the only cases we have found in which the point involved here was up for decision.  We think the decision in *Robertson* v. *Amazon Tug & Lighterage Co., supra,* was right and was rested upon correct principles.  It follows that we think the holding in *Gleason* v. *Smith* was right; but in so far as it was rested upon the theory that a warranty was not implicable for the reason that the letter was not apprised of the intended use, we think the opinion there may be somewhat confusing.  We have seen that a seller's knowledge of the use intended by the purchaser of a specific chattel will not raise an implication of a warranty, as matter of law.  *Bartlett* v. *Hoppock, supra.* It is not difficult, however, to conceive of circumstances in which such knowledge may be gained in such a way as to make it a fair question for the jury — assuming that competent proof may be adduced — as to whether a real warranty was intended, as a term of the contract.  Drawing upon a supposititious case, where the parol evidence rule is not in question, if the owner of a riding academy lets out a saddle horse, saddled and bridled, and apparently fit to ride, he impliedly warrants, as matter of law, that the horse is shod and in suitable condition for being ridden, for, these being the only facts, there is no question about which reasonable men could differ.  *Rinaldi* v. *Mohican Co.,* 225 N. Y. 70.  There the letter by his conduct, in those circumstances, in effect says to the hirer that the horse is ready and fit for riding.  But if the horse has merely a halter on, and is tied to a fence in a grocer's yard, and is hired by one secretly intending to ride him, and there were no other material facts, there would as clearly, as matter of law, be no warranty.  If, how-

ever, the hirer should tell the grocer that he wanted
to ride the horse, and ask that the horse be let out to
him for that purpose, and the grocer acquiesced but
said nothing about the horse's condition or its suit-
ability for riding, and all the particular circumstances
made it fairly inferable that the grocer understood
that his judgment was being relied upon, we think it
may be for the jury to say whether there was a war-
ranty. In connection with the determination of fact,
if the proofs make a given case one for the jury, it
may not be unimportant to bear in mind that a finding
of an implied warranty would necessarily put the case
in that category of bailment known as *locatio con-
ductio rei* (Pothier, Contract de Louage, 111 *et seq.;
Coggs* v. *Bernard,* 2 Ld. Ray. 909; *Harrington* v.
*Snyder, supra*), which requires the bailor not only to
have the chattel bailed in suitable condition at the
time of the bailment, but to maintain it in that con-
dition during the entire agreed term of the bailment.
The inquiry as to the intention of the parties as to
maintenance may, we think, in a given case have much
to do with the decision of the question of fact whether
the bailor or letter made any agreement at all as to
condition; for the duty of maintenance might be so
onerous to the bailor as, considered in connection with
the price agreed upon, to make it very improbable that
any man would so engage himself.

In our opinion, the case at bar falls within the second
of the supposed-case classes referred to, and we do
not think the contract can be added to or affected by
parol evidence. The written agreement that memorial-
ized the engagement of the parties contained no refer-
ence to the use to which the dredge was to be put, and
to add such a provision by parol would change the
nature of the plaintiff's obligation and thus vary the
terms of the contract. *Eighmie* v. *Taylor,* 98 N. Y.

288; *Mayer* v. *Dean*, 115 id. 556; *Thomas* v. *Scutt*, 127 id. 133; *De Witt* v. *Berry*, 134 U. S. 306; *Meyer* v. *Everth*, 4 Camp. 22; *Case Plow Works* v. *Niles & Scott Co.*, 90 Wis. 590; *Franklin Fire Ins. Co.* v. *Martin*, 40 N. J. L. 568, 575; 4 Wigm. Ev. § 2434, and cases cited. The decision in *Chapin* v. *Dobson*, 78 N. Y. 74, is clearly distinguishable. In that " borderline " case (so described in the opinions in the *Eighmie* and *Thomas* cases) the agreement, although signed by both parties, was a short memorandum of very informal nature. Here the contract was apparently complete on its face, it was formal in character and expression, and its execution included the affixing of the corporate seals and formal acknowledgments by both parties. The difference in that regard is of the highest importance. *Thomas* v. *Scutt, supra.* Further, in the *Chapin* case, the parol agreement there in question related not to a then present condition or act, but to something to be done in the future, thus creating an entirely collateral agreement. Here a parol agreement would relate wholly to a condition existing at the time the written agreement went into effect, a distinction stressed by Judge Finch in *Eighmie* v. *Taylor.*

Nor can it be urged that the mere use in the written contract of the word " dredge," in describing the *Arthur H.*, is to be given the effect of adding to the plaintiff's engagement an obligation that would not otherwise exist. The word was a general description of the type of vessel that was bailed, and nothing more. Even where a specific article that is sold is at a distance, and unavailable for examination by the buyer, the utmost that a general term of description can accomplish — and this not as a warranty, but as a stated term of the contract — is to make it necessary that the thing delivered shall have the general character-

istics of the kind of thing sold. Where, for example, a certain ship then at sea was sold, and it happened that at the time of the sale the ship had barely weathered a severe storm, and had been beached, and was a total loss from an insurance point of view, the buyer was not heard to say that he was buying nothing short of a seaworthy ship in fair condition. *Barr* v. *Gibson,* 3 M. & W. 389. Baron Parke said the ship " still bore that character, * * * although * * * damaged, unseaworthy, or incapable of being beneficially employed. * * * Here the subject of the transfer had the form and structure of a ship, although on shore, with the possibility, though not the probability, of being got off." In the case at bar the dredge *Arthur H.* was clearly a dredge, although it was quite possibly a very poor one. Here the letter's case is stronger than that of the seller in *Barr* v. *Gibson,* for the defendant hired the *Arthur H.* after seeing it, and what it took for hire was, therefore, that particular vessel, which would have remained the *Arthur H.,* and therefore the subject of the hiring, whether it was a dredge, or a schooner, or a brigantine. Where a private residence is leased, it cannot be doubted that the lessor knew that his lessee intends to use it as a residence, yet we have seen that from that fact no implication arises that the house is usable as a residence. *Franklin* v. *Brown, supra.* There are numerous cases to be found in the books holding that a hirer, or a tenant, may recover for injuries suffered through the failure of the letter or of the lessor to disclose hidden dangers, such as *Cook* v. *New York Floating Dry Dock Co.,* 1 Hilt. 346; *King* v. *N. Y. C. & H. R. R. R. Co.,* 66 N. Y. 181; *Haigh* v. *Edelmeyer & M. Hod Elevator Co.,* 123 App. Div. 376; *Campbell* v. *Page,* 67 Barb. 13; *Kissam* v. *Jones,* 56 Hun, 432; *Edwards* v. *N. Y. & H. R. R. Co., supra,* and *Steefel* v. *Rothschild,*

*supra.* But, as was observed by Earl, J., in the *Edwards* case, and by Cullen, Ch. J., in the *Steefel* case, this liability arises *ex delicto,* and not *ex contractu.*

In addition to the implied warranty it contended for, defendant relied upon a stated, or alleged express, warranty, made prior to the execution of the written contract, which, although objected to as varying the terms of the written contract, was admitted in evidence. This was a written description of the dredge which amounted to nothing more than a statement of the type of construction, and was not in any sense a representation of the condition of the dredge at the time of the hiring. The error in admitting it was, therefore, negligible, and would not require a new trial. What we deem to have been the erroneous view of the learned trial judge in relation to the warranty question does, however, make it necessary that the case be sent back for a new trial.

GUY and WEEKS, JJ., concur.

Judgment reversed, and new trial ordered, with thirty dollars costs to appellant to abide event.