JOHN LaROCCA, Plaintiff, *v.* STEPHEN J. FARRINGTON et al., Doing Business as S. J. FARRINGTON IRON WORKS, et al., Defendants.

Supreme Court, Trial Term, Kings County, November 30, 1948.

*Hyman Goldberg* and *Louis Rothbard* for plaintiff.

*Patrick J. McCann* for Stephen J. Farrington and another, doing business as S. J. Farrington Iron Works, defendants.

*Samuel E. Swiggett* for Turner Dock Transfer Corporation, defendant.

WALSH, J. A jury returned a verdict for plaintiff. The court had reserved decision on the motion to dismiss at the end of the plaintiff's case and at the end of the whole case, and also on the motions for the direction of a verdict and the motions to set aside the verdict. There is also pending a motion by one defend-

ant to dismiss a cross complaint. The parties have submitted briefs and the court now passes upon all of the motions.

Plaintiff was employed by McNulty Shipyards Company (hereinafter called McNulty) as a handyman. On November 2, 1945, while standing on a truck which was being loaded with scrap iron by a tractor crane, the plaintiff was injured trying to avoid the crane boom which fell when a link broke.

The tractor crane was owned by defendant Turner Dock Transfer Corporation (hereinafter called Turner). Turner had leased it with other cranes to defendants Farrington, doing business as S. J. Farrington Iron Works (hereinafter called Farrington). Farrington had leased the tractor crane to McNulty, plaintiff's employer. Defendant Farrington interposed a cross complaint against defendant Turner.

There was no written agreement of lease between any of the parties. There is nothing in the record to indicate that the defendants were to maintain the crane in good order and condition or to make any inspections. The defendants were examined separately before trial as adverse parties and the evidence of Turner was not binding on Farrington, and vice versa. However, in any event, such evidence merely shows that Turner made a bare lease to Farrington, and made some repairs at its own expense, and that Farrington made other repairs, and between February 1 and February 15, 1945, after the crane had been damaged, Turner overhauled the crane and Farrington paid one half the cost. Whether or not McNulty paid any of the cost of any of the repairs does not appear.

The crane was originally rented by Turner to Farrington on October 12, 1944, on a monthly basis, and by Farrington to McNulty on October 14, 1944. Up to September 15, 1945, the latter rental was on an hourly basis, and Farrington supplied a man to operate the crane. Thereafter, from September 15th to the time of the accident on November 2, 1945, Farrington rented the crane to McNulty without any man, a bare rental on a monthly basis. McNulty then hired the same man who had operated the crane for Farrington during the entire time the crane had previously been at McNulty Shipyards. That man was operating the crane at the time of the accident in question.

There is nothing in the record to show that the defendants did or did not inspect the crane before it left their possession, or that they did or did not make any inspections after it arrived at the McNulty Shipyards in October, 1944. No records of the Turner Company were available. The company had been liquidated and the records disposed of. In any event it appears that all of the rental was oral.

The link which broke was part of a chain and cable which controlled the adjustment of the boom upward and downward. The operator of the crane called by plaintiff testified he handled the chain every day in the morning to hold the boom in an upright position, and in the evening to lower the boom. He said he never saw any crack in the link. The record does not indicate that anyone inspected the crane or the links for McNulty while it was in the possession of McNulty.

A metallurgist testifying as an expert for plaintiff said that he had examined the link after the accident. Referring to it and to enlarged photographs of the fracture, he testified that the link was made of one-inch tempered steel, 7 inches long and 4½ inches wide. In his opinion, there had been a crack in the link for a long time which started as a small, invisible defect, probably in the manufacture of the link more than two years before the accident, and that the rust started to develop when the link was put in use.

In his opinion, 75% of the exposed, broken face of the link was heavily rusted, indicating that the crack had extended three quarters through the link before the accident. This witness described certain tests that could be made to detect a crack in a link before the crack became visible.

The transactions between Turner and Farrington, and between Farrington and McNulty were bailments. No case has been cited directly in point. The defendants claim that the law is found in section 388 of the Restatement of the Law of Torts which reads as follows:

" § 388. *Chattel Known to be Dangerous for Intended Use.*

" One who supplies directly or through a third person a chattel for another to use, is subject to liability to those whom the supplier should expect to use the chattel with the consent of the other or to be in the vicinity of its probable use, for bodily harm caused by the use of the chattel in the manner for which and by a person for whose use it is supplied, if the supplier

" (a) knows, or from facts known to him should realize, that the chattel is or is likely to be dangerous for the use for which it is supplied;

" (b) and has no reason to believe that those for whose use the chattel is supplied will realize its dangerous condition; and

" (c) fails to exercise reasonable care to inform them of its dangerous condition or of the facts which make it likely to be so."

Plaintiff contends that under *Devlin* v. *Smith* (89 N. Y. 477) and *MacPherson* v. *Buick Motor Co.* (217 N. Y. 382) and the

cases which followed them, the liability of defendants is not limited by their contract obligations, and while there was no privity between defendants and plaintiff, defendants nevertheless owed a duty to plaintiff to inspect and discover the defect in the link, and by their failure to do so they are liable to plaintiff in negligence.

Defendants did not manufacture the link or build the crane. In *Devlin* v. *Smith* (*supra*) the defendant built the scaffold on which plaintiff was to work and from which he fell. In *MacPherson* v. *Buick* (*supra*) the defendant did not manufacture the wheel, but did manufacture the automobile, using the defective wheel without ordinary and simple tests which would have disclosed the defect. McNulty was not engaged in the work of the defendants, which was the common situation in many of the other cases cited by plaintiff.

While the court has not found any case in this State which indicates that section 388 of the Restatement of the Law of Torts has or has not been accepted as the law of this State, there are three cases which would indicate that the principles laid down in the Restatement would apply in this case. (*Haigh* v. *Edelmeyer & Morgan Hod Elev. Co.*, 136 App. Div. 484; *Builders' Brick & Supply Co.* v. *Walsh Transportation Co.*, 106 Misc. 460, affd. 189 App. Div. 898; *Greenbaum* v. *Tiltz Air Conditioning Corp.*, 272 App. Div. 769, affd. 297 N. Y. 544.)

In the *Haigh* case (*supra*) where there was no claim that the piece was defective or improperly constructed when the elevator was installed by the lessor, there was no duty on the lessor to inspect after furnishing and installing the elevator. In the *Builders' Brick & Supply Co.* case (*supra*), it was held that where a specific dredge was let for an agreed rent, the lessor did not, as a matter of law, impliedly warrant that the dredge was reasonably fit for the purpose for which it was hired, or was in reasonably good condition. In the *Greenbaum* case (*supra*), it was held that a bailor of an automobile who knew that the door was defective when he loaned the automobile to a person who also knew of the defective door, was not liable to an infant passenger whom defendant knew would probably be a passenger and who was injured when the defective door opened while the bailee was driving the automobile. The complaint did not allege negligence in operation by the bailee.

Section 59 of the Vehicle and Traffic Law did not apply. The bailment was gratuitous. However, the jury rendered a verdict in favor of defendant after the court charged that if the bailee knew of the defective condition of the car door prior

to the happening of the accident the defendant bailor could not be held responsible. That case would appear to be an application of section 388 of the Restatement.

In the instant case, the court charged, in substance, that the plaintiff had offered some evidence to prove that the defendants, as lessors of cranes, should have known of the dangerous condition since the defect in the link was discoverable by inspection. However, what was discoverable by defendants was also discoverable by McNulty, the bailee who had possession of the crane for more than a year preceding the accident and who actually operated the crane during the seven weeks preceding the accident. If the defendants could be charged with constructive notice of the defect, then McNulty could likewise be charged with constructive notice and knowledge of the defect, and under section 388 and the *Greenbaum* case (*supra*), it would appear that knowledge of the defect relieved the bailor of liability.

The court now concludes that this case should not have been submitted to the jury. The motion to direct a verdict in favor of defendants is denied. The motion to set aside the verdict is granted, and the motion to dismiss the complaint at the end of the whole case is granted. The cross complaint of Farrington against Turner is dismissed. Settle orders.