MARY WINCKEL et al., Appellants, v ATLANTIC RENTALS & SALES, INC., et al., Respondents. (And a Third-Party Action.)

Second Department, July 16, 1990

## APPEARANCES OF COUNSEL

*Joel P. Stolowitz (Sweetbaum & Sweetbaum [Marshall D. Sweetbaum] of counsel), for appellants.*

*Meiselman, Boland, Reilly & Fugazzi (Donald J. Boland of counsel), for Atlantic Rentals & Sales, Inc., respondent.*

*Sheft & Sweeney (David J. Fischman of counsel), for Bud Maron and another, respondents.*

## OPINION OF THE COURT

Per Curiam.

A commercial lessor who introduces a defective product into the marketplace should be subject to the same potential liability that faces the manufacturer or retailer of a defective product. Applying this rule to the present case, we conclude that the trial court erred in dismissing those of the plaintiffs' claims that were based on the doctrines of strict products liability and breach of warranty, insofar as those claims were asserted against the defendant Atlantic Rentals & Sales, Inc. This defendant, unlike its codefendants, was in the business of renting equipment, and leased an allegedly defective chair. This defendant therefore may be liable, even in the absence of fault, for the injuries suffered by the plaintiffs on account of the alleged defect in the chair.

The plaintiff Mary Winckel is an antiques dealer. On June 8, 1984, she participated in an antiques show that took place at the New York Coliseum. During the course of the exhibition, she sat down on a folding metal chair and the chair collapsed. There was evidence that after the accident, parts of the chair appeared to be bent, and that a metal band under-

neath the chair was broken in half. She claims to have suffered several injuries as a result of this incident, including a "fracture of the coccyxgeal segment".

The plaintiffs Mary Winckel and Richard Winckel sued the defendant Atlantic Rentals & Sales, Inc. (hereinafter Atlantic), the owner of the chair in question. The first cause of action, which is based on negligence, is not at issue on appeal. The second cause of action seems to sound in breach of warranty, but could also be interpreted as asserting a cause of action based on the doctrine of strict products liability. The third cause of action is based on Mr. Winckel's loss of consortium. The plaintiffs also sued Bud Maron and Murial Maron. Mr. Maron is an officer or employee of Gem Shows, Inc., a corporation in the business of promoting antiques shows. The defendant Atlantic brought a third-party action against the third-party defendant Samsonite Corporation (hereinafter Samsonite), the alleged manufacturer of the chair.

The action proceeded to trial on December 5, 1988. The court dismissed the third-party action against Samsonite after the completion of opening statements. After the plaintiffs had presented their case to the jury, the court also dismissed the plaintiffs' complaint insofar as it was asserted against the defendant Atlantic. Later, after Mr. Maron had testified, the court reaffirmed its decision to dismiss the complaint insofar as it was against Atlantic, and also dismissed the complaint insofar as it was against Mr. and Mrs. Maron. Judgment was subsequently entered in favor of the defendants and against the plaintiffs. This appeal followed.

The plaintiffs argue that they succeeded in establishing a prima facie case based on theories of breach of implied warranty and strict products liability. In order to establish liability based upon these theories, the plaintiffs were required to prove (1) that the chair in question was not fit to be used as intended, (2) that the defect existed as of the time that it left the defendants' hands, (3) that the plaintiff Mary Winckel used the chair in question as it was intended to be used, (4) that the plaintiff Mary Winckel would not have been able to discover any defect in the chair through the exercise of ordinary care, and (5) that the defect was a substantial factor in causing the accident *(see generally, Codling v Paglia,* 32 NY2d 330; 2C Warren, New York Negligence, Products Liability, § 3.01; 47 NY Jur, Products Liability, §§ 74-78; PJI 2:141). We believe that the plaintiffs have proved these elements of their cause of action.

While there was no proof of a specific defect in the chair, under certain circumstances a jury may infer that a product was defective solely on the basis of proof that the product did not function as intended. However, if a defendant comes forward with any evidence that the accident was not necessarily attributable to a defect, the plaintiff must then produce direct evidence of a defect *(see generally, Halloran v Virginia Chems.,* 41 NY2d 386, 388; *Putnick v H.M.C. Assocs.,* 137 AD2d 179, 183; *Brandon v Caterpillar Tractor Corp.,* 125 AD2d 625, 626; *Coley v Michelin Tire Corp.,* 99 AD2d 795; *Yager v Arlen Realty & Dev. Corp.,* 95 AD2d 853; *Iadicicco v Duffy,* 60 AD2d 905; *Tully v Empire Equip. Corp.,* 28 AD2d 935; 1 Weinberger, New York Products Liability § 20:04). In this case, the defendants failed to offer any cogent reason for the chair's collapse, and the plaintiffs were entitled to rely on circumstantial evidence.

██ Based on our review of the facts of this case, we believe that the jury could properly have found that the chair upon which Mary Winckel sat was, in fact, defective, and that it was defective at the time it was delivered by the defendant Atlantic to the New York Coliseum. We also conclude that the jury could have found that Mary Winckel could not have discovered the defect through the exercise of ordinary care, and that she used the chair as it was intended to be used. A prima facie case based on the theories of breach of warranty and strict products liability was therefore established. However, the question remains whether the jury could properly have concluded that these particular defendants are liable for the injuries allegedly caused by this defective product. We find that such liability may be imposed only on the defendant Atlantic, the owner and lessor of the chair.

Our precedents establish the rule that a lessor of chattel is "under an obligation to ascertain that the chattel was reasonably fit for the * * * intended use" *(Industralease Automated & Scientific Equip. Corp. v R. M. E. Enters.,* 58 AD2d 482, 486). In other words, under the common law as it has evolved in this State, a lessor of a chattel will be held to have made an implied warranty that the chattel in question is fit to be used as intended *(see, Industralease Automated & Scientific Equip. Corp. v R. M. E. Enters., supra; see also, Hoisting Engine Sales Co. v Hart,* 237 NY 30, 37; *Atlantic Tug & Equip. Co. v S & L Paving Corp.,* 40 AD2d 589, 590; *Communications Groups v Warner Communications,* 138 Misc 2d 80, 84-85). As the court stated in *Vander Veer v Tyrrell* (29 AD2d 255, 259),

"[w]here possession of a chattel is transferred in exchange for a rental and the parties contemplate the return of the chattel to the owner, a warranty will be implied that the chattel is reasonably fit for the purpose for which it is leased or hired" (citing *Matter of Casualty Co. [Bliss Co. Claim]*, 250 NY 410; *Hoisting Engine Sales Co. v Hart*, 237 NY 30, *supra; Moriarity v Porter*, 22 Misc 536; 5 NY Jur, Bailment, § 72; Farnsworth, *Implied Warranties of Quality in Non-Sales Cases*, 57 Colum L Rev 653 [1957]; *see also, Craig v American Dist. Tel. Co.*, 91 Misc 2d 1063; 1 Weinberger, New York Products Liability § 7:05). In addition to this common law of implied warranty, New York's statutory implied warranty of fitness extends to transactions that involve certain leases *(see,* UCC 2-314, 2-315, 2-318; *Owens v Patent Scaffolding Co.*, 77 Misc 2d 992, *revd on other grounds* 50 AD2d 866; *Hertz Commercial Leasing Corp. v Transportation Credit Clearing House*, 59 Misc 2d 226, *revd on other grounds* 64 Misc 2d 910; *see also, Industralease Automated & Scientific Equip. Corp. v R. M. E. Enters., supra;* 1 Weinberger, New York Products Liability § 7:06).

While actions based on a theory of breach of implied warranty could, at one time, be pursued only by those individuals who were in privity with the manufacturer, retailer, or lessor, in *Codling v Paglia* (32 NY2d 330, 342, *supra)*, the Court of Appeals extended the right to relief on the basis of implied warranties to "any person injured or damaged if the defect was a substantial factor in bringing about his injury or damages". The *Codling* court did not recognize a completely new cause of action for "strict products liability", but instead simply "recognized in its modern guise a pre-existing theory of liability * * * described by use of the phrase 'breach of implied warranty' " *(Victorson v Bock Laundry Mach. Co.*, 37 NY2d 395, 401). Moreover, in 1975 the Legislature amended New York's UCC 2-318, and this amended provision expressly states that the UCC's implied warranties extend "to any natural person if it is reasonable to expect that such person may use, consume or be affected by the goods" (UCC 2-318; *see also, Heller v U. S. Suzuki Motor Corp.*, 64 NY2d 407, 410-411). The doctrine of privity has therefore lost all significance in actions to recover damages for personal injuries, although it retains some importance in actions to recover damages for economic losses *(see, Key Intl. Mfg. v Morse/Diesel, Inc.*, 142 AD2d 448).

The rule in New York, therefore, has developed that a commercial lessor of a product will be held strictly liable for

personal injuries, just as would a product manufacturer, even in the absence of privity, at least where the product lease in question was "made by an individual in the business of leasing a particular product" *(Nastasi v Hochman,* 58 AD2d 564; *see also, Opera v Hyva, Inc.,* 86 AD2d 373; *Farina v Niagara Mohawk Power Corp.,* 81 AD2d 700). As we stated in *Mi Suk Buley v Beacon Tex-Print* (118 AD2d 630, 631), "this court has recognized that some leases, i.e., those made by an individual in the business of leasing the particular product, could give rise to a cause of action sounding in strict products liability" (citing *Samaras v Gatx Leasing Corp.,* 75 AD2d 890; *Nastasi v Hochman, supra; see also,* 1 Weinberger, New York Products Liability § 7:07).

The rule that commercial lessors that are in the business of placing products into the stream of commerce should be equated with product manufacturers for the purposes of determining strict liability *(see, e.g., Opera v Hyva, Inc., supra; Nastasi v Hochman, supra)* has gained wide acceptance in other jurisdictions. For example, in *Miles v General Tire & Rubber Co.* (10 Ohio App 3d 186, 189, 460 NE2d 1377, 1380), the court stated that "[t]here is no logical reason to distinguish commercial lessors from manufacturers or sellers for the application of strict liability for dangerously defective goods." The court went on to catalog a list of jurisdictions that have adhered to this rule *(Miles v General Tire & Rubber Co., supra; see also, Peterson v Safeway Steel Scaffolds Co.,* 400 NW2d 909 [SD]; *Francioni v Gibsonia Truck Corp.,* 472 Pa 362, 372 A2d 736; *Woodworth v Gates Learjet Corp.,* 173 Mich App 480, 434 NW2d 167; *Steffl v J.I. Case Co.,* 862 F2d 692; 12A Frumer and Friedman, Products Liability § 3.03 [4] [b] [iii], at 3-425—3-427; Restatement [Second] of Torts § 402 A).

We therefore conclude that the plaintiff has established a prima facie case against the defendant Atlantic. The plaintiffs' second cause of action, insofar as it is asserted against Atlantic, should therefore be reinstated. While this cause of action expressly refers to a "breach" of a "warranty", it may also be interpreted as sounding in strict products liability. There is, in fact, no substantive distinction between these two theories in the context of this case. "[S]trict liability in tort and implied warranty in the absence of privity are merely different ways of describing the very same cause of action" *(Mendel v Pittsburgh Plate Glass Co.,* 25 NY2d 340, 345). While the distinction between these two theories may have significance with respect to Statutes of Limitation or other issues *(see, Heller v*

*U. S. Suzuki Motor Corp.,* 64 NY2d 407, *supra; Martin v Dierck Equip. Co.,* 43 NY2d 583), the distinction is in no way critical with respect to the issue of Atlantic's potential liability. Even if the distinction were critical in some way, the plaintiffs would, under all the circumstances of this case, be entitled to leave to amend their complaint to clarify that their second cause of action comprises these two separate theories *(see,* CPLR 3025 [b]; *Loomis v Civetta Corinno Constr. Corp.,* 54 NY2d 18; *Murray v City of New York,* 43 NY2d 400, 405). The plaintiffs' third cause of action, which is to recover damages for loss of consortium, should also be reinstated.

■ However, imposition of strict liability or liability based on breach of warranty upon the Marons is not warranted. They personally never had title to or actual possession of the chair; instead, they (or their corporation) rented the chair from Atlantic as an incidental part of their primary undertaking, i.e., the promotion of an antiques show. The chair was delivered (along with approximately 300 other chairs) by Atlantic to the Coliseum, and then set up by union members who, according to Mr. Maron, had been retained by a separate company. Thus, "distribution of [the] product [was] incidental to [the Marons'] regular business" *(Perazone v Sears, Roebuck & Co.,* 128 AD2d 15, 20), so that strict products liability should not be imposed on them.

As the Court of Appeals noted in *Sukljian v Ross & Son Co.* (69 NY2d 89, 95), "[t]he policy considerations that have been advanced to justify the imposition of strict liability on manufacturers and sellers in the normal course of business obviously lack applicability in the case of a party who is not engaged in the sale of the product in issue as a regular part of its business" *(see also, Perazone v Sears, Roebuck & Co., supra; Gobhai v KLM Royal Dutch Airlines,* 57 NY2d 839, *affg* 85 AD2d 566; *Brumbaugh v CEJJ, Inc.,* 152 AD2d 69, 71; *Wellman v Supreme Farmstead Equip.,* 100 Misc 2d 956; Restatement [Second] of Torts § 402 A, comment f). In other words, since the Marons were not in the business of leasing chairs *(cf., Mi Suk Buley v Beacon Tex-Print,* 118 AD2d 630, 631, *supra; Samaras v Gatx Leasing Corp.,* 75 AD2d 890, *supra),* it would not be appropriate to impose liability on them in the absence of fault.

Accordingly, the judgment under review should be modified, on the law, by reinstating the plaintiffs' second and third causes of action insofar as they are asserted against Atlantic, and by severing those causes of action and granting the

plaintiffs a new trial with respect to them. The trial court's dismissal of Atlantic's third-party complaint is not incorporated in the judgment and is not before us on this appeal by the plaintiffs.

THOMPSON, J. P., BRACKEN, LAWRENCE and KUNZEMAN, JJ., concur.

Ordered that the judgment is modified, on the law, by deleting the provisions thereof that are in favor of the defendant Atlantic Rentals & Sales, Inc., dismissing the plaintiffs' second and third causes of action insofar as they are asserted against it, and substituting therefor a provision severing those causes of action insofar as they are asserted against it; as so modified, the judgment is affirmed, and a new trial is granted to the plaintiffs with respect to the second and third causes of action insofar as they are asserted against Atlantic Rentals & Sales, Inc., with costs to the plaintiffs payable by Atlantic Rentals & Sales, Inc., to abide the event of the new trial.