■ Frank M. Hopps et al., Respondents, v Pengate Handling Systems of New York, Inc., Appellant. (And a Third-Party Action.) [763 NYS2d 856] —Cardona, P.J. Appeal from an order of the Supreme Court (Hester, Jr., J.), entered July 5, 2002 in Delaware County, which denied defendant's motion for summary judgment dismissing the complaint.

On May 27, 1996, plaintiff Frank M. Hopps, an employee of third-party defendant, Kraft Foods, Inc., was operating a forklift owned by defendant and leased to Kraft for use at Kraft's warehouse when, according to Hopps, it suddenly shifted into high gear and jerked sideways into a storage rack. The collision dislodged materials which toppled onto the overhead guard of the forklift above Hopps causing it to collapse, allegedly resulting in his injury.

Hopps and his wife, derivatively, commenced this personal injury action against defendant to recover damages. Defendant answered and commenced a third-party action against Kraft. Following discovery, defendant moved for summary judgment dismissing the complaint, alleging, among other things, that Kraft's failure to properly maintain the forklift caused Hopp's accident. Supreme Court denied defendant's motion, resulting in this appeal.

Initially, defendant contends that it owed no duty of care to Hopps, a noncontracting party to the written lease agreement, and, therefore, it cannot be held liable for his alleged injury. Plaintiffs counter that defendant owed a duty to Hopps arising

out of the maintenance provisions of the lease with Kraft and as an owner/lessor and repairer of equipment. Pursuant to the lease agreement, defendant agreed to service and maintain the forklift "in proper working condition" and Kraft agreed to provide "normal maintenance." Additionally, Kraft agreed to make the forklift available to defendant for servicing at reasonable times during defendant's business hours.

Under decisional law, "a contractual obligation, standing alone, will generally not give rise to tort liability in favor of a third party" (*Espinal v Melville Snow Contrs.*, 98 NY2d 136, 138 [2002]; *see Eaves Brooks Costume Co. v Y.B.H. Realty Corp.*, 76 NY2d 220, 226 [1990]). However, the Court of Appeals has recognized such liability in three situations involving ongoing service contracts: "(1) where the contracting party, in failing to exercise reasonable care in the performance of his [or her] duties 'launche[s] a force or instrument of harm'; (2) where the plaintiff detrimentally relies on the continued performance of the contracting party's duties[;] and (3) where the contracting party has entirely displaced the other party's duty to maintain the premises safely" (*Espinal v Melville Snow Contrs., supra* at 140 [citation omitted], quoting *Moch Co. v Rensselaer Water Co.*, 247 NY 160, 168 [1928]). (*See Palka v Servicemaster Mgt. Servs. Corp.*, 83 NY2d 579, 589 [1994]; *Eaves Brooks Costume Co. v Y.B.H. Realty Corp., supra* at 226.) In opposing summary judgment, plaintiffs did not submit any proof in reference to (1) or (2) above and relied on the third situation, more particularly, the one described in *Palka v Servicemaster Mgt. Servs. Corp.* (*supra*).

In *Palka*, a management services corporation was held liable to a noncontracting hospital employee injured by a falling wall-mounted fan as a result of the corporation's negligent performance or nonperformance of its duty to inspect and maintain the hospital's premises under an exclusive maintenance agreement. In our opinion, defendant's contractual undertaking with Kraft lacked the comprehensiveness and exclusivity contemplated by the service contract in *Palka* (*see Espinal v Melville Snow Contrs., supra* at 140). Notably, the contract clearly reserved to Kraft the right to provide "normal maintenance," which, by its language, did not specifically prohibit Kraft from performing mechanical repairs. The contract signatories' conduct bore this out in that each performed significant repairs to the forklift. The repair log of Kraft's maintenance employee, Arden Stickle, demonstrates the extensive nature of the repairs that he undertook on this forklift which included, inter alia, replacement of worn parts and repeated

rewelding of broken welds on the overhead guard. The evidence shows, therefore, that defendant's service contract did not "entirely displace[ ]" Kraft's own equipment maintenance program (*Espinal v Melville Snow Contrs., supra* at 140; *see Palka v Servicemaster Mgt. Servs. Corp., supra* at 589). Accordingly, we find defendant owed no duty of care to Hopps stemming from its service contract with Kraft.

We do, however, find that defendant owed a duty of care to Hopps arising out of its status as a repairer of the equipment it provided. The evidence shows that during the two-year period following the forklift's May 4, 1994 delivery to Kraft and prior to the accident, defendant's service technicians made repeated repairs to the forklift's steering, hydraulic fluid, travel and speed control systems. We find that a question of fact exists as to whether a faulty repair to one or more of those systems caused the forklift to crash into the metal racks resulting in Hopps's injury.

In addition to responding to specific requests from Kraft for repair service, there was also evidence that defendant's service technicians performed regular preventative maintenance inspections of the forklift. In our view, a question of fact exists as to whether defendant performed "reasonably careful and prudent" inspections (*Wroblewski v Otis El. Co.*, 9 AD2d 294, 296 [1959]) of the forklift's operating systems. Furthermore, during one of those inspections on May 4, 1995, prior to the accident, defendant's service technician, Steven Utter, observed broken welds on the overhead guard and reported that discovery to defendant. Plaintiffs offered proof that defendant knew the overhead guard was a safety device, that only certified welders should perform the welding necessary to repair it and, for that reason, defendant would not permit its technicians to repair the guard. As a result, that responsibility apparently fell to Stickle, an uncertified welder. Under such circumstances, there is a question of fact as to whether defendant should have warned Kraft of potential defects in the guard posed by improper welding (*cf. Pollock v Toyota Motor Sales U.S.A.*, 222 AD2d 766, 768 [1995]).

Turning to the proximate cause issue, defendants argue that the sole proximate cause of Hopps's injury was the failure of the overhead guard occasioned by Stickle's repairs. We find defendant's proof insufficient to establish, as a matter of law, that a faulty repair or inspection of the forklift's steering, travel, hydraulic fluid and speed control systems or the failure to warn of potential defects in the overhead guard due to improper welding, were not "substantial cause[s] of the events

which produced the injury" (*Derdiarian v Felix Contr. Corp.*, 51 NY2d 308, 315 [1980]; *see Kush v City of Buffalo*, 59 NY2d 26, 32-33 [1983]). "Where causation is disputed, summary judgment is not appropriate unless 'only one conclusion may be drawn from the established facts' " (*Speller ex rel. Miller v Sears, Roebuck & Co.*, 100 NY2d 38, 44 [2003], quoting *Kriz v Schum*, 75 NY2d 25, 34 [1989]).

Finally, we find that defendant failed to establish, as a matter of law, that Hopps's conduct in rewelding the broken welds on the overhead guard was an intervening act which relieved it of liability inasmuch as it cannot be said that such conduct was not "a normal or foreseeable consequence of the situation created by [its alleged] negligence" (*Derdiarian v Felix Contr. Corp., supra* at 315).

Accordingly, we find that defendant has failed to establish its entitlement to summary judgment as a matter of law.

Crew III, Peters, Spain and Lahtinen, JJ., concur. Ordered that the order is affirmed, with costs.