Reese v Raymond Corp. (2022 NY Slip Op 01077)





Reese v Raymond Corp.


2022 NY Slip Op 01077


Decided on February 17, 2022


Appellate Division, Third Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided and Entered:February 17, 2022

532253
[*1]Betty A. Reese, Appellant,
v
The Raymond Corporation, Respondent, et al., Defendant.

Calendar Date:January 4, 2022

Before:Egan Jr., J.P., Lynch, Clark and Pritzker, JJ.

Law Office of Ronald R. Benjamin, Binghamton (Ronald R. Benjamin of counsel), for appellant.
Coughlin & Gerhart, LLP, Binghamton (Paul J. Sweeney of counsel), for respondent.



Pritzker, J.
Appeal from an order of the Supreme Court (Faughnan, J.), entered September 30, 2020 in Broome County, which, among other things, granted a motion by defendant The Raymond Corporation for summary judgment dismissing the amended complaint against it.
Plaintiff is an employee of Contract Packaging Services, Inc. (hereinafter CWS), where she carries out "various activities in connection with the production of . . . pallet trucks." Defendant The Raymond Corporation (hereinafter defendant) is a New York company that markets and sells hand trucks and, as relevant to this action, had a relationship with Raymond-Muscatine, Inc. (hereinafter Muscatine), a company based in Iowa, whereby Muscatine would manufacture pallet trucks for defendant. Upon the transfer of assembly line equipment previously used by Muscatine to a New York warehouse and assembly facility owned by defendant Rogers Service Group, Inc. in 2015, defendant contracted with Rogers to assemble and package hand pallet trucks (hereinafter HPTs) based on a manufacturing services agreement (hereinafter the MSA). The MSA included, in part, a bailment provision naming defendant as the title holder of the equipment and solely responsible for its repair, with the exception of preventative maintenance that was the responsibility of Rogers. Rogers hired employees from CWS to carry out the assembly of the HPTs for defendant. In November 2015, when an air line in a Coney table (hereinafter the table)[FN1] malfunctioned, plaintiff sustained injuries to her elbow, shoulder, wrist and hand. Plaintiff commenced this action against defendant on theories of strict products liability, breach of implied warranty, negligence and failure to warn.[FN2] Defendant answered and asserted 28 affirmative defenses.
After the parties completed discovery, defendant moved for summary judgment dismissing the amended complaint. Plaintiff opposed defendant's motion and cross-moved for partial summary judgment on the issue of defendant's liability. After defendant opposed the cross motion, Supreme Court granted defendant's motion for summary judgment dismissing the amended complaint and denied plaintiff's cross motion, finding that defendant established that it did not own or control the equipment. Plaintiff appeals.
We turn first to plaintiff's arguments that Supreme Court erred in granting defendant's motion for summary judgment as to the breach of implied warranty and strict products liability causes of action because defendant failed to demonstrate the absence of material issues of fact as to its status as an owner and/or bailor. We agree. The party moving for summary judgment "must make a prima facie showing of entitlement to judgment as a matter of law, tendering sufficient evidence to demonstrate the absence of any material issues of fact. Failure to make such prima facie showing requires a denial of the motion, regardless of the sufficiency of the opposing papers" (Alvarez v Prospect Hosp., 68 NY2d 320, 324 [[*2]1986] [internal citations omitted]). As relevant here, an implied warranty exists in the bailment, lease or hire of property that the property is "reasonably fit and suitable for the purpose for which it is expressly let out" or for which the owner knows it will be used (Hoisting Engine Sales Co. v Hart, 237 NY 30, 37 [1923]; see Winckel v Atlantic Rentals & Sales, 159 AD2d 124, 127 [1990]; Santiago v United Cerebral Palsy of Ulster County, Inc., 77 AD3d 1270, 1271-1272 [2010]).
In support of its motion for summary judgment, defendant proffered, among other things, affidavits of employees from defendant, Rogers and Muscatine, as well as deposition testimony from, among others, plaintiff and other CWS employees. In the attorney affirmation in support of defendant's motion, defendant asserted that it "did not place [the table] into the stream of commerce by distributing, selling or leasing it to Rogers, and did not have an ownership interest in the machine." However, the affidavits and deposition testimony proffered by defendant raise questions of fact as to defendant's ownership, and status as a bailor, of the table. For example, in his deposition testimony, Joseph Villanella, a supervisor for CWS, averred that defendant owned the table. Moreover, defendant also proffered the MSA, which defines the two parties to the agreement as defendant and Rogers and specifically provides, in the bailment provision, that title and ownership of the consigned property, which includes the table, "shall remain with [defendant]." Although some of the affidavits proffered by defendant assert that Muscatine is the owner of the table, this begs the question of why Muscatine is not a party to, or even mentioned, in the MSA. In light of these material issues of fact as to whether defendant owned and/or was bailor of the table, we find that Supreme Court erred in granting defendant's motion for summary judgment as to the breach of implied warranty cause of action. As "[t]here is, in fact, no substantive distinction between [the theories of breach of implied warranty and strict products liability] in the context of this case" (Winckel v Atlantic Rentals & Sales, 159 AD2d at 129), we reach this same conclusion as to the strict products liability cause of action.
We turn next to plaintiff's arguments that Supreme Court erred in granting defendant's motion for summary judgment as to the negligence and failure to warn causes of action because defendant failed to demonstrate that it did not owe plaintiff a duty of care. We agree. In a negligence action, a plaintiff must prove that a defendant owed "a duty, breached that duty and that the breach was the proximate cause of the injuries complained" (Colucci v Stuyvesant Plaza, Inc., 157 AD3d 1095, 1097 [2018], lv denied 31 NY3d 906 [2018]; see Buckley v 18 E. Main St., LLC, 199 AD3d 1283, 1284 [2021]). "[O]rdinarily, a breach of a contractual obligation will not be sufficient in and of itself to impose tort liability [*3]to noncontracting third parties upon the promisor" with three exceptions: "(1) where the contracting party, in failing to exercise reasonable care in the performance of his [or her] duties, 'launche[s] a force or instrument of harm'; (2) where the plaintiff detrimentally relies on the continued performance of the contracting party's duties and (3) where the contracting party has entirely displaced the other party's duty to maintain the premises safely" (Edick v Paul deLima Co., 6 AD3d 864, 864-865 [2004] [internal quotation marks and citations omitted]; see Espinal v Melville Snow Contrs., 98 NY2d 136, 138, 140 [2002]). Safety issues raised by an unfulfilled contractual obligation, alone, will not create tort liability; rather, "liability will attach only if defendant's safety responsibilities are comprehensive and exclusive under the contract" (Edick v Paul deLima Co., 6 AD3d at 865 [internal quotation marks, brackets and citation omitted]; see Palka v Servicemaster Mgt. Servs. Corp., 83 NY2d 579, 588-589 [1994]).
As to the failure to warn cause of action, "a party who contracts to inspect, provide routine maintenance and repair a product has a duty to warn the user of any defect therein" (Theoharis v Pengate Handling Sys. of N.Y., 300 AD2d 884, 885 [2002]; see Pollock v Toyota Motor Sales U.S.A., 222 AD2d 766, 768 [1995]). Where "such contracting party possesses exclusive authority in that regard, the duty assumed 'extends to noncontracting individuals reasonably within the zone and contemplation of the intended safety services'" (Theoharis v Pengate Handling Sys. of N.Y., 300 AD2d at 885, quoting Palka v Servicemaster Mgt. Servs. Corp., 83 NY2d at 589).
The MSA proffered by defendant in support of the motion for summary judgment states that defendant "shall be solely responsible for all maintenance (breakdowns, excluding [preventative maintenance])/repair to [c]onsigned [e]quipment," which includes the table. Similarly, affidavits of Alan Bartels, a Muscatine employee, Nicholas J. Chambers, a Rogers employee, and Joerg Klose, defendant's employee, all establish that defendant was not responsible for the preventative maintenance of the table but was otherwise responsible for the repair of it. These affidavits demonstrated that, in the event of a breakdown of the table, or other equipment, Rogers would notify defendant, which would then come to repair the equipment. However, deposition testimony also proffered by defendant raises material questions of facts as to whether defendant did in fact have exclusive control over maintenance. Specifically, Villanella testified that preventative maintenance procedures were not put in place until after plaintiff's accident and that, before the accident, the equipment "broke down every other day" and defendant would have to be called to fix things. It was Villanella's understanding that the equipment was defendant's property and CWS employees were told not to try to fix it. Similarly, Eric Moore, [*4]the Director of Operations for CWS, averred that defendant was responsible for all maintenance. Plaintiff also testified, at her deposition, that all maintenance was done by defendant, specifically testifying that "per [defendant's employee Klose], the only individuals that would touch any kind of maintenance or anything to do with those machines needed to be [defendant]."
Given the foregoing, defendant's proffered evidence creates material issues of fact such that even though the MSA provided that defendant would be "solely responsible for all maintenance . . . excluding [preventative maintenance]," in practice, defendant was exclusively in control of all maintenance and was made aware of persistent maintenance issues (see generally Palka v Servicemaster Mgt. Servs. Corp., 83 NY2d at 588-589; compare Edick v Paul deLima Co., 6 AD3d at 865). CWS employees were directed not to attempt any form of maintenance on the equipment and that, if maintenance was needed, Rogers would contact defendant. Although, as defendant argues, Rogers shared contractual obligations to perform preventative maintenance on the equipment and defendant classifies itself as a mere "on-call" repair servicer, the record illustrates that the actual maintenance practices were such that Rogers did not undertake any routine or preventative maintenance or inspection of the equipment prior to plaintiff's injury and that defendant's maintenance obligations were more extensive than merely being on call. Further, the MSA expressly made defendant "solely responsible for all maintenance" and repair, including when equipment broke down, save for preventative maintenance, therefore resulting in defendant assuming the responsibility for ensuring that the equipment could be used safely in production and inducing reliance by CWS employees that defendant was properly maintaining the equipment (see Espinal v Melville Snow Contrs., 98 NY2d at 139-141; Palka v Servicemaster Mgt. Servs. Corp., 83 NY2d at 587, 589-590; Hopps v Pengate Handling Sys. of N.Y., 307 AD2d 665, 667 [2003]). Given the existence of material issues of fact as to whether defendant had exclusive control over maintenance and repairs, defendant did not establish a prima facie case. Thus, Supreme Court erred in granting summary judgment to defendant as to the negligence and failure to warn causes of action.
In light of these issues of material fact, we do not find that Supreme Court erred in denying plaintiff's cross motion for partial summary judgment. Given this determination, plaintiff's remaining contention has been rendered academic.
Egan Jr., J.P., Lynch and Clark, JJ., concur.
ORDERED that the order is modified, on the law, without costs, by reversing so much thereof as granted the motion by defendant The Raymond Corporation for summary judgment; motion denied; and, as so modified, affirmed.



Footnotes

Footnote 1: This table "received . . . palletized load[s] of HPT frames on rollers, and[,] when activated by a pneumatic-controlled hand lever, would flip the pallet (and its load) 90-degrees forward (and then back . . . ), by means of a series of four . . . pneumatic air cylinders." The table is referred to as a "Coney table," "6-pack-flipper" and "Roller Rack Tilter."

Footnote 2: Plaintiff initially commenced this action asserting a claim for negligence against defendant and CWS. Plaintiff then filed an amended complaint, replacing CWS with Rogers and asserting four causes of action. Rogers settled with plaintiff and is not a party on appeal.