Dorman v 19-20 Indus. City Assoc., Inc. (2004 NY Slip Op 50754(U))

[*1]

Dorman v 19-20 Indus. City Assoc., Inc.

2004 NY Slip Op 50754(U)

Decided on June 23, 2004

Supreme Court, Kings County

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and will not be published in the printed Official Reports.

Decided on June 23, 2004

Supreme Court, Kings County
Nicholas Dorman and Deborah Dorman, Plaintiffs,
against
19-20 Industry City Associates, Inc., S & E Building Supplies, Inc. And Cammerby's Management Company, LLC., Defendants.
50292/00

Howard A. Ruditzky, J.
defendant S&E Building Supplies, Inc. ("S&E") moves for an order, pursuant to CPLR 3212, granting it summary judgment dismissing the complaint of plaintiffs Nicholas and Deborah Dorman ("plaintiffs") and all cross-claims asserted against it. Defendants 19-20 Industry City Associates, Inc. ("Industry City"), and Cammeby's Management Company, LLC. ("Cammeby"), cross-move for an order, pursuant to CPLR 3212, granting summary judgment dismissing the complaint and all cross-claims asserted against them.
[*2]Facts and Procedural Background
Plaintiffs commenced this action seeking to recover compensatory and derivative damages for injuries sustained by Nicholas Dorman ("plaintiff"), on May 7, 1999, while in the course of his employment with Plywood Specialties, Inc. ("Plywood"). Plaintiff was injured when Rederick Downes ("Downes"), a co-worker who was operating a hi/lo forklift, backed the vehicle up over him. The accident occurred in a warehouse located at 4015 First Avenue in Brooklyn (the "Warehouse"), owned by Industry City and leased to Plywood; Cammeby is the managing agent for the building. S&E is named as a defendant premised upon plaintiff's belief that S&E and Plywood were owned by the same people.
At his deposition, plaintiff testified that at the time of the accident, he was employed by Plywood, loading and unloading trucks and rail cars; that Chris Davie was his supervisor and co-employee; and that there were generally two forklifts in the Warehouse which were repaired when the mechanic from S&E determined that repairs were necessary. Plaintiff also testified that the lighting in the Warehouse was poor; the light fixtures were old and consisted of a single light bulb; that half of the fixtures did not work; and that he had told co-worker Matthew Davie about the problem on numerous occasions. At the time of the accident, plaintiff was facing a stack of plywood, counting the number of sheets by running his right hand over the stack because it was too dark to see, when the forklift hit him; he had his back to the forklift and did not see it strike him. Plaintiff further testified that the lighting was bad because plywood in the area was stacked in a manner that caused it to block the light. In addition, the forklift that struck him did not have any lights on the back, side-view mirrors, or a back-up beeper.
In an affidavit, Downes states that he was operating a forklift in the Warehouse and had seen plaintiff inside the office. The affidavit continues:

"Without my knowledge, Mr. Doorman [sic] had left the office and walked behind my forklift. As I was backing up, the forklift I was operating struck Mr. Doorman [sic]. I did not see Mr. Doorman [sic] because I was not looking behind me as I was backing up the forklift."
Matthew Davie testified that at the time of the accident, he was the president of Plywood and that Plywood and S&E had some shared stockholders. Plywood was engaged in the business of selling wholesale plywood, building materials, and lumber; S&E was engaged in the retail lumber business. Both plaintiff and Downes were employees of Plywood; S&E did not have any employees working at the Warehouse. S&E conducted business with Plywood "only to the extent that [S&E] picked up materials there." Davie further testified that Plywood leased the Warehouse; it owned two forklifts that were located there; in approximately 1996, Plywood replaced some of the existing lighting fixtures with high density fixtures; it was Plywood's responsibility to maintain the lighting and to replace light bulbs; and that Plywood replaced the light bulbs in the Warehouse, as was necessary. Julius Chabbott testified that on the date of the accident, he was employed by Industry City as a property manager. Chabbott identified Plywood as the lessee of the Warehouse; he was not familiar with S&E. Chabbott testified that Plywood had a "triple net lease," i.e. the landlord was only responsible for the roof and the structure; everything else, including maintaining lighting, was the responsibility of the tenant. [*3]Chabbott was not aware of any complaints that had been made with regard to the building in the six months prior to the accident.

S&E's Contentions
In support of its motion, S&E argues that as limited by plaintiffs' bill of particulars, plaintiffs are claiming that S&E was negligent in its operation, maintenance, management, control and inspection of the Warehouse; in failing to provide adequate lighting at the Warehouse; in failing to maintain the forklift that struck plaintiff; and in negligently hiring, training and/or supervising Downes. S&E asserts that since it did not own or lease the Warehouse where plaintiff was injured or the forklift that injured him; did not hire, train or supervise plaintiff or Downes; and did not direct, supervise, or control the work performed in the Warehouse, it cannot be found liable to plaintiff for the injuries sustained. To support this conclusion, S&E notes that plaintiff acknowledges that he was employed by Plywood at the time of the accident and that plaintiff's claim is based upon nothing more than the fact that S&E and Plywood have some common shareholders, a legally insufficient basis upon which to premise liability.
S&E also relies upon an affidavit submitted by Matthew Davie, in which he avers that Plywood and S&E were family-owned, closely held corporations. At the time of the accident, plaintiff was supervised by Christopher Davie. Christopher Davie was an employee and stockholder of Plywood; he was never employed by or held an interest in S&E. Davie further alleges that S&E was not a signator to the lease for the Warehouse and did not manage, direct, control, or supervise the daily operations of Plywood or the Warehouse.
In another affidavit, Christopher Davie alleges that at the time of the accident, he was employed as the manager for Plywood, he was a stockholder of the corporation, and he supervised plaintiff and Downes. Davie further alleged that he was never employed by S&E, nor did he ever possess an ownership interest in that corporation.
In further support of its assertion that the Warehouse is leased by Plywood and that Plywood is responsible for all repairs, S&E annexes a copy of the lease, which establishes that the Warehouse was leased by FGP Bush Terminal, Inc. to Plywood for the period from January 1, 1995 to December 31, 1999 (the "Lease"), and that the Lease was assigned to Industry City on August 13, 1998, when it purchased the building. S&E further asserts that while the Lease obligates the owner to maintain and repair the exterior and public portions of the building (Lease, para 4), pursuant to a clause in the Rider annexed to and made a part of the Lease, "[i]t is understood and agreed that Tenant shall be responsible for all repairs to the within demised premises" (Rider, p 15, para 59).
Moreover, S&E contends that the deposition testimony of Matthew Davie establishes that at the time of the accident, Downes and plaintiff were employed by Plywood; that S&E did not have any employees working at the Warehouse; and that S&E did not control, manage, maintain, or supervise the Warehouse or any persons working there. Moreover, in opposing a previous motion by S&E to amend its answer, plaintiffs' attorney alleged that both plaintiff and Downes were in the course of their employment with Plywood when the accident occurred. Finally, Matthew Davie testified that Plywood owned two forklifts that were located at the Warehouse.
Contentions of Industry City and Cammeby
In support of their cross-motion for summary judgment, Industry City and Cammeby [*4]contend that plaintiffs' cause of action as against them is premised upon the claim that the accident occurred as the result of inadequate lighting. They accordingly argue that dismissal is appropriate on the ground that inadequate lighting was not the proximate cause of the incident, since the affidavit submitted by Downes establishes that the accident occurred because he was not watching where he was going when he backed up over plaintiff.
In addition, Industry City and Cammeby rely upon the above-noted provisions of the Lease and deposition testimony to establish that Plywood was responsible for maintaining the lighting in the Warehouse. Hence, even assuming plaintiff's testimony that 50% of the light bulbs were burnt out on the day of the accident, Plywood, and not Industry City or Cammeby, was responsible for replacing them. Similarly, plaintiff cannot establish that either Industry City or Cammeby was responsible for the supervision or control of Plywood's employees, for stacking plywood in the Warehouse in a manner that blocked the lighting, or for the ownership or maintenance of the forklift.
In further support of its assertions, Industry City and Cammeby submit an affidavit from Bruce Federman, the director of real estate for Industry City. Federman explains that Cammeby is a general partner in Industry City. In addition, he alleges that the responsibility for maintaining the lighting at the Warehouse was on Plywood. Federman also asserts that neither Industry City nor Cammeby supervised or controlled Plywood's activities in the Warehouse or any of its employees.
Industry City and Cammeby also argue that they are entitled to summary judgment dismissing plaintiffs' claim as it is premised upon alleged statutory violations. More particularly, they contend that plaintiffs have failed to establish a violation of New York City Electrical Code § B-30-157.2 (the "Code"), which requires one watt per square foot for warehouses. This assertion is premised upon an affidavit submitted by Les Winter, a licensed and registered engineer, wherein he opines that based upon the findings of Denise P. Bekaert, A.I.A., a licensed architect, the rating on the existing panel board corresponded to a total of 81,000 watts, or 4.8 watts per square foot based on the Warehouse being 16,668 square feet in size, in conformity with the Code.
Further, Industry City and Cammeby assert that the alleged violation of one of the standards established by the Illuminating Engineering Society of America, Design for Warehouse Lighting (I.E.S. DG-2-1992) (the "IES Standards") cannot provide a basis for liability, since it is not a statute, rule or ordinance. Moreover, the cited standard provides for illumination levels in warehouses and states that luminaries should be located over aisles and regularly cleaned, and that stacked materials and open storage should be planned so that aisles are illuminated. Hence, if any violation of this standard was found to exist, responsibility would lie with Plywood, the tenant responsible for maintaining the lighting and directing placement of stored materials.
Industry City and Cammeby also argue that Plywood's control over the Warehouse, the activities of its employees, the maintenance of the forklift, and the placement of the stored materials compel the finding that they are not liable for any alleged violations of Labor Law § 200, even assuming that plaintiffs can succeed in establishing the existence of such violations. They also assert that plaintiffs' alleged violation of Labor Law § 257 is without merit since that provision pertains to the illumination of factories, and plaintiff was injured in a warehouse. Finally, Bekaert opines that plaintiffs' reliance upon New York City Administrative Code § 27-[*5]375 ("Section 27-135") is misplaced since that provision pertains to interior stairs as a means of egress, and the subject accident occurred on the floor of a warehouse.
Plaintiffs' Opposition
In opposition to the motion and cross-motion, plaintiffs allege that Industry City's cross-motion must be denied on the ground that New York City Administrative Code § 27-127, which requires that "[a]ll buildings and all parts thereof shall be maintained in a safe condition," and § 27-128, which requires that "[t]he owner shall be responsible at all times for the safe maintenance of the building and its facilities," imposes an absolute duty upon Industry City. In addition, they argue that issues of fact are created with regard to whether S&E was involved in the operation of Plywood and/or the maintenance, installation and replacement of lighting fixtures in the Warehouse. Plaintiff further seeks to impose liability upon S&E and Cammeby by asserting that he complained "on numerous occasions over the course of several years" about the problems with the lighting. To support their claims, plaintiffs submit a letter from John Garretto, a professional engineer, in which he opines that the lighting in the Warehouse was below the level set by the IES Standards and code requirements and that management was negligent in providing insufficient lighting.

Basis of Liability
Premised upon the Lease, the deposition testimony, and the affidavits submitted on the motion and cross-motion, S&E, Industry City, and Cammeby have made a prima facie showing that the responsibility for maintaining lighting at the Warehouse was imposed on Plywood. Similarly, the deposition testimony and affidavits establish that none of the defendants played any role in maintaining, controlling, or supervising the Warehouse or any of Plywood's employees. None of the arguments advanced by plaintiffs to refute this showing are sufficient to overcome defendants' entitlement to summary judgment as a matter of law.
Duty
"It is axiomatic that 'before a defendant may be held liable for negligence it must be shown that the defendant owes a duty to the plaintiff . . . In the absence of duty, there is no breach and without a breach there is no liability'" (Dugue v 1818 Newkirk Mgt., 301 AD2d 561, 562 [2003], quoting Pulka v Edelman, 40 NY2d 781, 782 [1976]).
Herein, S&E, Industry City and Cammeby have made a prima facie showing that they did not own, lease, manage, or maintain the Warehouse where plaintiff was injured or the forklift that injured him, and that they did not hire, train, or supervise any of Plywood's employees. Plaintiffs have failed to refute this showing. As such, even assuming that plaintiff's accident was, in fact, caused by defective and/or inadequate lighting or a defective forklift, defendants cannot be held liable, since plaintiff has failed to establish that any of the defendants owed a duty to him (Dugue, 301 AD2d 561; see generally Schulman v City of New York, 190 AD2d 663 [1993][since the City of New York did not own the roadway where decedent was killed, nor did it undertake a duty with respect to the maintenance of the roadway, the City could not be held liable]).
Proximate Cause
The concept of proximate cause "stems from policy considerations that serve to place manageable limits upon the liability that flows from negligent conduct" (Derdiarian v Felix 
Contr., 51 NY2d 308, 314 [1980]). "Where the acts of third persons intervene between the [*6]defendants' conduct and the plaintiff's injury, liability turns on whether the intervening act is a normal or foreseeable consequence of the situation created by the defendants' negligence" (Megally v LaPorta, 253 AD2d 35, 43 [1998]). Thus, "[t]he issue of whether a defendant's negligence was a proximate cause of an accident is separate and distinct from the negligence determination. A defendant may act negligently without that negligence constituting a proximate cause of the accident" (Ohdan v City of New York, 268 AD2d 86, 89 [2001], appeal dismissed 95 NY2d 885 [2000], lv denied 95 NY2d 769 [2000]), since "[n]o duty is imposed on a defendant to prevent a third party from causing harm to another unless the intervening act which caused the plaintiff's injuries was a normal or foreseeable consequence of the situation created by the defendant's negligence" (Huber, 229 AD2d 469, 470 [1996]). Further, while "it is generally true that the issue of proximate cause is typically one for the trier of fact to determine, nevertheless, '[t]here are certain instances . . . where only one conclusion may be drawn from the established facts and where the question of legal cause may be decided as a matter of law'" (Wright v New York City Tr. Auth., 221 AD2d 431, 431-432 [1995], lv denied 88 NY2d 806 [1996], quoting Derdiarian, 51 NY2d at 315; accord Megally, 253 AD2d 35; Fine v Schneider Air Serv., 249 AD2d 440 [1998]).
Hence, "[l]iability may not be imposed upon a party who '"merely furnished the condition or occasion for the occurrence of the event" but was not one of its causes'" (Ortiz v Jimtion Food, 274 AD2d 508, 508 [2000], quoting Shatz v Kutshers Country Club, 247 AD2d 375 [1998]). For example, the lessors of an apartment were granted summary judgment where the one-year old plaintiff, moving about an apartment, pulled an electrical cord hanging down and plugged into an outlet located near the floor, causing a pot of hot water to fall on her, since their alleged negligence in placing the outlet near the floor may have created the occasion for the accident, but it was not the proximate cause, since the infant plaintiff's injuries were caused by an intervening act which was not foreseeable (Siso v Tawil, 2 AD3d 828 [2003]). Likewise, it has been held that defendants' failure to repair a leak was not a proximate cause of the plaintiffs' injuries when plaintiff fell while carrying a bucket that had been filled with water from the leak (Barragan v Mathai, 253 AD2d 508 [1998]). As another example, a landlord was not liable for injuries on the ground that he failed to maintain plaintiff's smoke alarm in proper working order when plaintiff was injured by hot oil when she grabbed a burning pan off the stove because she had fallen asleep while frying chicken and awoke to smell smoke. The court reasoned that the landlord was not liable for his tenant's injuries where there was no causal connection between his purported negligence and the plaintiff's accident (Perry v Millio, 245 AD2d 358 [1997]).
Also instructive here are cases that have addressed the issue of proximate cause in accidents involving motor vehicles. For example, a complaint was dismissed against the owner of a garbage can that was placed on the sidewalk and the company which collected the garbage when plaintiff, who was jogging on the sidewalk, went into the street to avoid the garbage can and was struck by a car attempting to pull into traffic from the parking lane, inasmuch as the plaintiffs failed to establish any negligent act by the owner of the garbage can or the collection company, and the placement of the garbage can on the sidewalk was not a proximate cause of the accident as a matter of law (Creamer v Snediker, 274 AD2d 492 [2000]). In another case, Brocato v Grippe (269 AD2d 414 [2000]), it was held that the defendant town was entitled to summary judgment dismissing the complaint where the defendant was in a 30 miles per hour [*7]zone, driving at an approximate speed of between 65 and 85 miles per hour, when he drove over an alleged depression in the road, lost control of the vehicle, hit a pole, and injured the plaintiff-passenger. In so holding, the court reasoned that the town's alleged negligence in allowing a section of the roadway to become depressed could not be a proximate cause of the accident. Rather, the conduct of the defendant in driving at an excessive rate of speed was a superseding event which "'severed whatever causal connection there may have been between the occurrence of the accident and the defendant's alleged negligence'" (id. at 415, quoting Wright, 221 AD2d at 432; accord Perry v Kazolias, 302 AD2d 575 [2003][even if a town was negligent in its design and maintenance of the roadway where a single-vehicle accident occurred, such negligence was not the proximate cause of the accident where the driver was familiar with roadway, was driving at an excessive rate of speed, and failed to keep proper lookout]). In yet another case, Gilmore v Ritchie (260 AD2d 347 [1999]), it was held that even if the appellant had been negligent in parking her vehicle on the center median of the highway, her actions were not the proximate cause of plaintiff's injury. "Rather, the appellant's conduct furnished the condition for the occurrence of the accident, which took place when the plaintiff exited [his] vehicle, and then unexpectedly ran across the westbound lanes of the highway, where he was struck by a van" (id. at 347 [citations omitted]).
Applying the general principles established by the above-discussed cases to the instant facts, the Court finds that even assuming that the plaintiffs raised a triable issue of fact as to the defendants' negligence in installing and/or maintaining the lighting in the Warehouse, they failed to raise a triable issue of fact as to whether their negligence was a proximate cause of his injuries. "It is basic that one alleging inadequate lighting must show a breach of a duty of reasonable care and that such breach was the proximate cause of the injuries" (Christoforou v Lown, 120 AD2d 387, 391 [1986], citing Quinlan v Cecchini, 41 NY2d 686 [1977]). Herein, the accident was not a normal and foreseeable consequence of any actions on the part of the person or entity responsible for maintaining lighting in the Warehouse [see generally Gordon v New York City Tr. Auth., 267 AD2d 201 [1999][the evidence failed to establish a causal relationship between the allegedly dim lighting and the accident]). Rather, the situation created by the alleged inadequate lighting, which arguably caused plaintiff to count the stack of plywood by running his hand over the sheets, so that his back was to the forklift when he was struck, "'merely furnished the condition . . . for the occurrence of the event rather than [being] one of its causes'" (Mannion v Lizza Indus., 127 AD2d 567, 568 [1987], quoting Sheehan v City of New York, 40 NY2d 496, 503 [1976]).
Hence, the Court concludes that under the circumstances of this case, the supervening act of Downes in backing up the forklift without watching where he was going broke any chain of causation. In fact, in the similar case of Hernandez v New York Post Co., Inc. (205 AD2d 447 [1994], lv dismissed 84 NY2d 864 [1994]), it was held that "[t]he record reveals that defendant driver's operation of a Hi-Lo forklift, in reverse, without first taking notice of the presence of any individuals in the surrounding area, was a proximate cause of the vehicle's contact with plaintiff resulting in injury . . ." (id. at 447). Such is the case here, as is established by Downes in his affidavit. Further, at his deposition, plaintiff testified that at the time that he was hit, he had his back to the forklift and he was counting stacked sheets of plywood. Hence, plaintiffs' alleged claim that his accident was caused by inadequate lighting is without merit.
[*8]Condition and Maintenance of the Forklift
Plaintiffs also maintain that S&E was negligent in that the forklift was not reasonably safe because it was not equipped with a back-up warning alarm and because it had no rearview mirrors or rear lights. Finding this claim is be insufficient to impose liability upon S&E, Industry City and/or Cammeby, the court notes, as discussed above, that defendants have made a prima facie showing that the subject forklift was owned by Plywood. Plaintiffs have failed to refute this showing, since plaintiff admitted during his deposition that he was simply "guessing" that S&E owned the forklift, based upon his understanding that S&E was the parent company of Plywood, but that he did not know. In this regard, it is well settled that "[r]ank speculation is no substitute for evidentiary proof in admissible form that is required to establish the existence of a material issue of fact and, thus, defeat a motion for summary judgment" (Warden v Orlandi, 4 AD3d 239, 242 [2004], citing Tungsupong Bronx-Lebanon Hosp. Ctr., 213 AD2d 236, 238 [1995]; accord Moore v True North Communications, 1 AD3d 175 [2003][plaintiff's surmise, conjecture or suspicion was insufficient to defeat the summary judgment motion]; Barker v St. Barnabas Hosp., 305 AD2d 130 [2003][mere surmise or conclusory allegations were insufficient as a basis to deny summary judgment]; Massaro v Wellen Oil & Chemical, 304 AD2d 538 [2003] [conjecture and speculation was insufficient to defeat summary judgment]).
Similarly, plaintiff's testimony that S&E mechanics repaired the forklift, as needed, is also insufficient to establish negligence on the part of S&E, since it is not alleged that any repairs were negligently performed prior to the accident or that the accident was caused by needed repairs that had not been made (cf. Hopps v Pengate Handling Sys., 307 AD2d 665 [2003][genuine issue of material fact as to whether the proximate cause of injuries suffered by lessee's employee when the leased forklift he was operating crashed into a storage rack was occasioned by faulty repairs performed by the lessee, or whether the lessor's faulty repair or inspection of the forklift's steering, travel, hydraulic fluid, and speed control systems or its failure to warn of potential defects in the overhead guard due to improper welding were substantial causes of employee's injury, precluded summary judgment in employee's personal injury action against lessor]; Brady v Biotech, 283 AD2d 452 [2001]([plaintiff raised a triable issue of fact regarding whether the malfunctioning of the contact tips or of the "dead man" brake pedal proximately caused his injuries and whether the forklift service corporation should have remedied such defects when its employee inspected the forklift after plaintiff had notified it that the forklift "felt jerky"]).
 In addition, plaintiffs failed to establish that a back-up warning alarm, rearview mirrors, or rear lights were mandated by any Federal or State law, rule or regulation (see Geddes v Crown Equip., 273 AD2d 904, 905 [2000], quoting Patane v Thompson & Johnson Equip. Co., 233 AD2d 905, 906 [1996]). Plaintiffs have similarly failed to allege any other basis upon which the Court could conclude that the failure to provide a back-up alarm or rearview mirrors constitutes negligence for which S&E could be held liable (see generally Bova v Caterpillar, 305 AD2d 624 [2003][seller of a forklift was not liable for personal injury sustained where the affidavit of plaintiff's expert did not raise a triable issue of fact where it failed to indicate that the expert's opinion regarding the forklift accident was based on inspection of the forklift, the workplace where the accident occurred, or the failure to abide by industry standards or government regulations]; Vannucci v Raymond, 258 AD2d 198 [1999][in a products liability action brought [*9]by the operator of a forklift against the manufacturer seeking recovery for injuries sustained when the forklift underrode shelving and pinned his head against steering wheel, the affidavit of plaintiff's expert failed to raise a triable issue which would indicate that defendants breached a duty of reasonable care when they designed the product with a safety option, thereafter making it available to the consumer, who was in the better position to assess its need in light of the purpose for which it was intended]; see generally Scarangella v Thomas Built Buses, 250 AD2d 664 [1998], affd 93 NY2d 655 [1999][the fact that the optional safety feature for a school bus of a back-up alarm was not made a standard feature did not render the design of the bus defective, for the purposes of an action brought after the bus driver was struck by a bus which was being operated in reverse, since the bus company which purchased the bus was a highly knowledgeable consumer, the risk of harm from absence of an alarm was not substantial, and the bus company was in the position to balance benefits and dangers of not having the device]).
Violations of Statutes and/or Code Provisions
The alleged violations of statutes and/or code provisions, as relied upon by plaintiffs, also fail to provide a basis upon which liability could be predicated, even assuming that S&E, Industry City, and/or Cammeby were responsible for the alleged inadequate lighting in the Warehouse. In this regard, the Court finds that plaintiffs failed to refute the opinions offered by Bekaert and Winter that the circuits in the Warehouse provided 4.8 watts per square foot, in conformity with Section 30-157.2 of the Electrical Code. In this regard, it is noted that although Garretto concludes that the lighting is insufficient, his calculations refer to lumens and foot candles, while the Code provision in issue refers to watts per square foot.
Further, inasmuch as Section 27-375 pertains to interior stair wells and the subject accident occurred on the Warehouse floor, this provision has no application in this case (see generally Walker v 127 West 22nd Street Assocs., 281 AD2d 539 [2001]; Savarese v Sacred Hearts & St. Stephen's Church, 2002 WL 1461777 [2002], appeal dismissed 309 AD2d 848 [2003]).
Plaintiffs' reliance upon the IES Standards is also unpersuasive, since it has been held that reliance upon non-mandatory recommendations and guidelines promulgated by governmental and professional entities, absent proof that a particular guideline or recommendation has been adopted in actual practice, cannot be held to impose a heightened standard of care (Capotosto v Roman Catholic Diocese, 2 AD3d 384 [2003]). Plaintiffs herein have failed to make a showing that the standards relied upon are mandatory or intended to be exclusive (see e.g. Davidson v Sachem Cent. School Dist., 300 AD2d 276 [2002]; Washington v City of Yonkers, 293 AD2d 741 [2002]). Moreover, plaintiffs' reliance upon the unsworn letter from Garretto, wherein he alleges that the lighting does not conform with the IES Standards, does not constitute evidentiary proof in admissible form and is therefore insufficient to defeat defendants' prima facie showing of entitlement to summary judgment as a matter of law (see e.g. Salmon v Wendell Terrace Owners, 5 AD3d 372 [2004]; Rodney v Maksim Solntseu, 302 AD2d 440 [2003]; Washington, 293 AD2d 741; Ritts v Teslenko, 276 AD2d 768 [2000]).
Further, plaintiffs' reliance upon the provisions of the Administrative Code of the City of New York § § 27-127 and 27-128 is misplaced, since it has been held that these provisions "are nonspecific and reflect only the general duty to maintain the premises in a safe condition," so that reliance thereon is insufficient to establish a breach of a statutory duty (see Jang Hee Lee v Sung [*10]Whun Oh, 3 AD3d 473 [2004]; McDonald v Riverbay, 308 AD2d 345 [2003]; Ahmad v City of New York, 298 AD2d 473 [2002]; Taylor v Park Towers South Co., 293 AD2d 668 [2002], lv denied 98 NY2d 612 [2002]; Dixon v Nur-Hom Realty, 254 AD2d 66 [1998]; Kilimnik v Mirage Rest., 223 AD2d 530 [1996]; see generally Ortiz v RVC Realty Co., 253 AD2d 802 [1998][defendants were properly granted summary judgment where the provisions of the Village of Hempstead Code § 78-7, upon which the plaintiffs relied in seeking to establish the violation of a statutory duty, were nonspecific and reflected only the general duty to maintain the premises, so that the landlord could not be held liable]).
Similarly, plaintiffs' Labor Law § 200 claim should be dismissed because, as was discussed above, there is no evidence that S&E, Industry City, and/or Cammeby supervised or controlled plaintiff's work or the Warehouse (Tornello v Beaver Brook Assocs., ___ AD3d ___, 777 NYS2d 490 [2004]; cf. Rizzuto v L.A. Wenger Contr. Co., 91 NY2d 343, 348 [1998][cause of action predicated upon Labor Law § 200 should not have been dismissed where the record presented sufficient evidence to raise a triable issue on whether defendant had control over the methods of the subcontractors and other worksite employees]).As an alternative basis for granting summary judgment dismissing the complaint, S&E, Industry City and Cammeby have also negated the other grounds upon which plaintiffs argue that liability can be predicated.
Liability of S&E In opposition to S&E's demonstration that S&E and Plywood are run as distinct, separate entities, and that S&E has no involvement in running the day-to-day operations of Plywood, plaintiffs have failed to establish that the relationship between S&E and Plywood is such that liability should be imposed upon S&E. In seeking to impose liability upon one corporation for the conduct of a related corporation, it is well established that:

"The corporate veil will be pierced (1) to achieve equity, even absent fraud, where the officers and employees of a parent corporation exercise control over the daily operations of a subsidiary corporation and act as the true prime movers behind the subsidiary's actions, and/or (2) where a parent corporation conducts business through a subsidiary which exists solely to serve the parent. . . .
"Stock control, interlocking directors and interlocking officers are in and of themselves insufficient facts to justify the imposition of such liability on the parent corporation. Control by the parent over the subsidiary's everyday operations will, however, render the parent liable for the subsidiary's acts."
(Pebble Cove Homeowners' Ass'n. v Fidelity New York FSB, 153 AD2d 843, 843 [1989][citations omitted]; accord Pritchard Services v First Winthrop Prop., 172 AD2d 394, 395 [1991]). Further, "the Court of Appeals has held that the imposition of liability upon a parent for the acts of its subsidiary 'can never be predicated solely upon the fact of a parent corporation's ownership of a controlling interest in the shares of its subsidiary'" (Daniels v Zelco, 159 AD2d 538, 540 [1990], quoting Billy v Consolidated Mach. Tool , 51 NY2d 152, 163 [1980]). Further, it has been held that two corporations are not alter egos of each other under circumstances where [*11]they have the same officers and directors and one is the landlord of the other (Mertz v Seibel Realty, 265 AD2d 925 [1999]).

Herein, although S&E and Plywood shared common shareholders, as was discussed above in detail, the deposition testimony and affidavits relied upon establish that plaintiff and Downes were employed by Plywood at the time of the accident; S&E did not direct, supervise and/or control the work performed by plaintiff or Downes; S&E was not the lessee or owner of the property on which the Warehouse was located, nor did it control or maintain the premises; and that S&E did not own the subject forklift. The Court also declines to find that the fact that S&E purchased materials from Plywood is adequate to allow plaintiff to pierce the corporate view. Hence, plaintiffs' conclusory allegations to the contrary with regard to these issues do not suffice to raise an issue of fact (see Polonetsky v American Broadcasting Cos., 283 AD2d 374, 374 [2001], citing Zuckerman v City of New York, 49 NY2d 557, 562 [1980]; see generally EquiCredit v Turcios, 300 AD2d 344 [2002][parent corporation established its entitlement to summary judgment dismissing the counterclaims asserted against it by submitting evidence that it was merely the parent corporation, while the mortgagors failed to present sufficient evidence that the parent dominated or controlled the subsidiaries as to warrant piercing the corporate veil]; Stockacre v PepsiCo, 265 AD2d 398 [1999][the corporate veil between the parent and subsidiary corporations could not be pierced, since the proffered evidence demonstrated that the parent did not exercise sufficient dominion and control over the subsidiary]; Sternberg v Osman, 181 AD2d 897 [1992], appeal dismissed 80 NY2d 892 [1992][appellant failed to carry his burden of proving that five satellite corporations and a main store were a single, unified franchise for the purpose of piercing the corporate veil under circumstances where although the six stores shared interlocking officers and directors to varying degrees, each satellite had its own manager and conducted its day-to-day operations essentially independently, with the main store's involvement in the satellites' business being largely service-oriented, based on the principle that everyone's costs would be minimized and profits maximized by a cooperative effort]; Horowitz v Aetna Life Ins., 148 AD2d 584 [1989][a parent company is not liable for the torts of its subsidiary, even if it is a wholly owned subsidiary, unless it can be shown that the parent's control over the subsidiary disregards its corporate independence]). Accordingly, the Court will not ignore the separate existence of Plywood and S&E for the purpose of holding S&E liable to plaintiff (see generally Buchner v Pines Hotel, 87 AD2d 691, 692 [1982], affd 58 NY2d 1019 [1983][where the principals of business entities, for their own business and legal advantage, elected to operate that enterprise through separate corporate entities, the separate corporate entities should not lightly be ignored at their behest in order to shield one of the entities they created from common-law tort liability]).
Liability of Industry City and/or Cammeby as Owner and Managing Agent of the Property on Which the Warehouse was Located
It is well established that an out-of-possession landlord is not liable for injuries that occur on the premises where the landlord neither retained control over the premises nor was contractually obligated to remedy unsafe conditions (see White v Jeffco Western Prop., 304 AD2d 824, 825 [2003], citing Blackwell v Jamal Holding, 240 AD2d 527, 528 [1997]; Wright v Feinblum, 220 AD2d 660 [1995]; Suarez v Skateland Presents Laces, 187 AD2d 500, 501 [*12][1992]). "Although reservation of a right of entry may constitute sufficient retention of control to impose liability upon an out-of-possession landlord for injuries caused by a dangerous condition which constitutes a violation of a duty imposed by statute, this exception applies only where 'a specific statutory violation exists and there is a significant structural or design defect'" (Nunez v Alfred Bleyer & Co., 304 AD2d 734, 734 [2003], quoting Fucile v Grand Union Co., 270 AD2d 227 [2000]; accord Spencer v Schwarzman, 309 AD2d 852, 853 [2003]; Silverman v Blenheim Assocs. Realty, 291 AD2d 214 [2002]; Pappalardo v New York Health & Racquet Club, 279 AD2d 134 [2000]).
Herein, the Lease, the deposition testimony of Chabbott and Matthew Davie, and the affidavits of Matthew Davie and Federman, establish that pursuant to its Lease for the Warehouse, Plywood was responsible for making all interior repairs, including maintaining the lighting. As was discussed in detail above, plaintiffs have failed to establish the violations of any statute or code provision. In addition, plaintiffs have failed to raise a triable issue of fact that the accident occurred because of a significant structural or design defect, since failure to maintain sufficient lighting cannot be characterized as a structural defect (see e.g. Javier v Ludin, 293 AD2d 448 [2002][the owners of the premises were entitled to summary judgment dismissing the complaint where plaintiff sustained injuries when he lifted a large reel of cloth over his head and struck an uncovered fluorescent light fixture hanging from the ceiling and alleged that the lack of a cover on the light rendered it defective, where the evidence in the record, including the lease, clearly established that although the owners had the right to re-enter, they were out-of-possession landlords with no statutory duty to repair the allegedly defective light fixture, and the injuries were not caused by a significant structural defect]; Felder v Wank, 227 AD2d 442 [1996], lv denied 89 NY2d 806 [1997][landlord owed no duty to plaintiff, whose fall down a stairway was allegedly caused by inadequate lighting resulting from a missing light bulb, where the lease between the landlord and the tenant specifically required the tenant to make all repairs and replacements to premises arising from tenant's use and occupancy]).
Finally, plaintiff's self-serving affidavit, in which he alleges that he had previously complained to Cammeby about poor lighting, is insufficient to raise an issue of fact since the allegation is inconsistent with plaintiff's deposition testimony, namely that he complained to Matt and Bud Davie that he did not know who Cammeby was, that he never met anyone from Industry City, and that he had no knowledge of any complaints made to the owners of the Warehouse (see generally Cuce v Bell Atlantic, 299 AD2d 387 [2002]; Hernandez v Seven Fried Food, 292 AD2d 343 [2002]; Califano v Campaniello, 243 AD2d 528, 529 [1997]).
Conclusion
Accordingly, the motion by S&E and the cross-motion by Industry City and Cammeby for summary judgment dismissing the complaint and all cross-claims asserted against them are hereby granted and the action is hereby dismissed in its entirety,
The foregoing constitutes the decision, order and judgment of the Court.
E N T E R,
_________________________
 J. S. C.